

# Miami International Airport North Terminal Development Consolidation Program



Trade Contract No. SC-00068
Beauchamp Construction Company, Inc.
Walls and Ceilings
Project 747B

# Trade Contract

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 1 of 52

# <u>TABLE OF CONTENTS</u>

**TRADE CONTRACT AGREEMENT**

| | |
|---|---|
| Article 1 | Trade Contract Documents |
| Article 2 | General Scope of Work |
| Article 3 | Trade Contract Price |
| Article 4 | Bonds |
| Article 5 | Insurance |
| Article 6 | Merger |
| Article 7 | Indemnification |

**ATTACHMENTS**

| | |
|---|---|
| Attachment  A | Scope and Description of Work |
| Attachment  B | General  Requirements |
| Attachment  C.1 and C.2 | Insurance Requirements |
| Attachment  D | Payment Provisions |
| Attachment  E | Milestones |
| Attachment  F | Other Trade Contract Documents |
| Attachment F.1 | Change Authorization Form |
| Attachment F.2 | Bid Submittal Documents |
| Attachment F.3 | Addenda |
| Attachment F.4 | List of Specifications |
| Attachment F.5 | List of Plans and Phasing Plans |
| Attachment F.6 | Scope and Description of Work |
| Attachment F.7 | Dispute Resolution Board (Applicable to the Prime Contract) (Section 8 of the Prime Contract – Owner Related Claims) |
| Attachment F.8 | DBE Goals |
| Attachment F.9 | Scope Clarifications |
| Attachment F.10 | Pre-Bid Schedule (POJV NTD_FO4) |

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

Page 2 of 52

November 6, 2007
Section 00031
Version 5

**THIS TRADE CONTRACT AGREEMENT** (hereafter "Trade Contract" or "Agreement") made this 6th day of November, 2007, by and between **PARSONS-ODEBRECHT, J.V.** a joint venture, with its principal place of business located at **NW 22nd Street and Perimeter Road, Building 3025, Miami Florida, 33159** (hereafter "Managing General Contractor," "MGC" or "POJV"), and **Beauchamp Construction Company** with its principal place of business located at **2100 Ponce De Leon Blvd., #825, Coral Gables, Florida 33134** (hereafter "Trade Contractor"), for the construction of certain portions or components of the Program known as NORTH TERMINAL DEVELOPMENT CONSOLIDATION PROGRAM (hereafter "Program" or "NTDCP") located at Miami International Airport.

**WHEREAS**, Managing General Contractor has entered into a Contract, with attachments, (hereafter "Prime Contract") with Miami-Dade County, through its Miami-Dade Aviation Department, (hereafter "Owner") to furnish work, labor and services for the construction of the Program in accordance with the Prime Contract and supporting documents, plans, specifications, general documents and technical specifications; and

**WHEREAS**, in 2006, the Trade Contractor provided a Bid which was based on certain Bid Documents,

**WHEREAS**, in 2007, the Trade Contractor was supplied with additional plans, specifications, phasing plans, scheduling information and terms and conditions which have led to revisions to the originally Bid Trade Contract Documents,

**NOW THEREFORE**, in consideration for the following mutual covenants and obligations, Managing General Contractor and Trade Contractor hereby agree as set forth below.

## ARTICLE 1 – TRADE CONTRACT DOCUMENTS

This Trade Contract agreed to and entered into this day, between Managing General Contractor and Trade Contractor consists of all documents defined in Article 1.1.18 of the General Conditions Provisions and the following: (1) this Trade Contract, along with its attachments; (2) the General Conditions Provisions; (3) all associated addenda, modifications, revisions, Plans, Specifications, Details, Schedules, Drawings and all general, technical, supplementary and special terms and conditions for the Work; (4) Instructions to Bidders, Bid Forms, Schedule of Prices and (5) all Affidavits attached hereto.

## ARTICLE 2 – GENERAL SCOPE OF WORK

Trade Contractor agrees it shall provide and furnish all labor, materials, tools, supplies, equipment, services, facilities, supervision, administration, etc., necessary for or incidental to proper and complete performance, and the acceptance thereof, of the work described in Attachment "A" of this Trade Contract (hereafter "Work").

## ARTICLE 3 – TRADE CONTRACT PRICE

Lump Sum Contract

Managing General Contractor agrees to pay Trade Contractor for the satisfactory performance of the Work in strict accordance with the Trade Contract Documents, the amount of **Sixty Four**

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

Page 3 of 52

November 6, 2007
Section 00031
Version 5

**Million Dollars ($ 64,000,000.00)** in accordance with Attachment "D" and this Article (hereafter "Trade Contract Price").

**ARTICLE 4 - BONDS**: Trade Contractor shall, as part of the Trade Contract, furnish to MGC fully and duly executed Performance and Payment Bonds, in accordance with the dual obligee forms provided in Specification Section 00005, issued by a surety company acceptable to MGC. Within ten (10) days from the date of execution of the Trade Contract, Trade Contractor shall furnish Performance and Payment Bonds, each in an amount equal to 100% of the Trade Contract Price as security. The Trade Contractor shall pay for the cost of the Performance and Payment Bonds and the cost therefore is deemed included in the Trade Contract Price. Failure to submit the executed Bonds within the time prescribed herein shall result in a failure to satisfy the condition subsequent of the provision of the Bonds and the forfeiture of the bid guaranty to the MGC, which forfeiture shall be considered not as a penalty but in liquidation of damages sustained by MGC.

If the Trade Contractor is to perform work in any area that requires additional bonding (i.e. U.S. Customs or other controlled areas), Trade Contractor shall pay for the cost of the additional Bonds and it is deemed included in the Trade Contract Price.

**ARTICLE 5 – INSURANCE:** This Trade Contract is under an Owner Controlled Insurance Program, hereafter referred to as OCIP. For Trade Contractors who qualify for participation in the OCIP (reference, Covered Parties, Section 3, OCIP Insurance Manual), certain insurance coverages are provided as indicated on Attachment "C.1" which also outlines the Trade Contractor's obligations for insurance coverages not provided within the scope of the OCIP. Certain trades may not qualify for participation within the OCIP (reference, Parties Not Covered, Section 3, OCIP Insurance Manual) Those parties which are not covered by the OCIP shall provide insurance coverages as indicated by Attachment "C.2". As part of Trade Contractor's overall obligation to protect others and the obligation to indemnify and hold MGC and Owner harmless from liability as provided in the Trade Contract Documents, Trade Contractor shall obtain, before commencement, and maintain until final acceptance of the Trade Contract, full insurance coverage as may be specified in Attachment "C.1" or Attachment "C.2" based on Trade Contractor's participation eligibility. Amounts of coverage shall not be less than those specified in the Trade Contract Documents. All insurance, which is not covered within the scope of the OCIP, shall be procured at Trade Contractor's expense and shall have MGC and Owner (MDAD) listed as additional insureds on each of these policies except the Workers' Compensation insurance. All insurance shall be placed and maintained in the form and with a company with a current "A.M. Bests Rating" of no less than A-VII and satisfactory to MDAD and MGC. In no case, however, shall Trade Contractor procure and maintain less than the insurance coverage as required on Attachments "C.1" and "C.2."

**ARTICLE 6 – MERGER:** This Trade Contract supersedes and is considered to be the culmination of all prior agreements and negotiations between MGC and Trade Contractor. No prior agreements, offers, proposals, bids, quotes, or other negotiations will be considered.

**ARTICLE 7 - INDEMNIFICATION**: In addition to the indemnification provisions set forth in the General Conditions Provisions, except as otherwise provided by law, including but not limited to Chapter 725 of the Florida Statutes, Trade Contractor shall indemnify, defend and hold harmless MGC, Owner, Architect/Engineer and their officers, representatives, consultants, agents, sureties and employees from and against any and all demands, claims, suits, causes of action, losses, penalties, liabilities, judgments, settlements, costs, damages, attorneys' fees, and expenses of any nature, including without limitation attorneys' fees and litigation costs, whether groundless or not, arising out of or alleged to have arisen directly or indirectly from:

POJV -- North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

Page 4 of 52

November 6, 2007
Section 00031
Version 5

(a) Trade Contractor's performance or lack of performance of the Trade Contract, including claims relating to the performance or lack of performance of its representatives, employees, agents, subcontractors, or suppliers, at any tier;

(b) any act or failure to act by Trade Contractor, its representatives, employees, agents, subcontractors, or suppliers, at any tier;

(c) any breach of this Trade Contract by Trade Contractor; or

(d) infringement of any patent, copyright, trademark, trade name, brand or slogan;

to the extent caused by the negligence, recklessness or intentional wrongful misconduct of Trade Contractor, persons employed or utilized by Trade Contractor in the performance of the Trade Contract, or anyone for whose acts Trade Contractor may be liable. However, the fact that a portion of the liability, damages, losses or costs is alleged to have been caused by a party indemnified hereunder shall not release the Trade Contractor from its responsibility to defend the parties indemnified hereunder or from its responsibility for the extent of the liability, damages, losses and costs caused by the negligence, recklessness or intentional wrongful misconduct of the Trade Contractor, persons employed or utilized by the Trade Contractor in the performance of the Trade Contract, or anyone for whose acts Trade Contractor may be liable.

**7.1** No Limitation Upon Liability: Trade Contractor's indemnification obligations under the Trade Contract Documents shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist. Trade Contractor's indemnification obligations under the Trade Contract Documents shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Trade Contractor under any Workers' Compensation acts, disability benefits acts, other employee benefit acts, or any other laws or statutes.

**7.2** Insurance or Security: Trade Contractor will maintain whatever security or insurance is reasonably necessary to protect MGC against any loss or liability and to fulfill Trade Contractor's indemnity obligations under the Trade Contract Documents.

**7.3** Trade Contractor's Performance: MGC (including its affiliates, parents, subsidiaries, officers, directors or employees) or Owner shall not be liable for any loss or casualty incurred or caused by Trade Contractor.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B



Page 5 of 52

November 6, 2007
Section 00031
Version 5

IN WITNESS WHEREOF, the parties hereto have executed this Trade Contract under seal, the day and year first above written.

TRADE CONTRACTOR:
BEAUCHAMP CONSTRUCTION COMPANY

By: _____
Donald L. Crissey, President

_____
WITNESS

_____
WITNESS

MANAGING GENERAL CONTRACTOR:
PARSONS-ODEBRECHT, J.V.

By: _____
David Brown, Project Director

By: _____
Lucas Prado, Construction Manager

By: _____
Claudio Almeida, Odebrecht Construction, Inc.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 6 of 52

# TRADE CONTRACT - ATTACHMENT A

# SCOPE AND DESCRIPTION OF WORK

This scope and description of Work is intended to be read in conjunction with all other provisions of the Trade Contract Documents. It is not intended to limit, replace, supersede or otherwise amend other descriptive terms of the Trade Contract Documents. It is intended to provide a more succinct, trade-specific summary of the details contained in the drawings, plans and specifications associated with the Work to be performed under this Trade Contract. The specific performance results intended for the Trade Contractor to achieve are those indicated in the Trade Contract Documents. All Work is to be in accordance with the Trade Contract Documents in their entirety and shall include all labor, materials, services, equipment, supervision, coordination, support, inspections, and any other ancillary or collateral resources and activities necessary to achieve proper performance and strict compliance with the terms of the Trade Contract Documents. The Work includes, but is not limited to, the following:

**See Attachment F.6 to Trade Contract entitled "Scope and Description of Work"**

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 7 of 52

# TRADE CONTRACT - ATTACHMENT B

# GENERAL REQUIREMENTS

## Table of Contents

1. General Requirements

2. Time

3. Schedule of Work

4. Schedule Changes

5. Priority of Work

6. Not Used

7. Sufficient Work Force Requirements

8. Managing General Contractor's Obligations

      8.1      Obligations Derivative
      8.2      Authorized Representative
      8.3      Storage Allocation
      8.4      Timely Communications

9. Trade Contractor's Obligations

      9.1      Obligations Derivative
      9.2      Trade Contractor's Representative
      9.3      Responsibilities
      9.4      Coordination
      9.5      Submittals and Shop Drawings
      9.6      Safety
              9.6.1  Safety and Clean-up
              9.6.2  Safety Meetings
      9.7      Protection of Work
               9.7.1 Hurricane Protection
      9.8      Permits, Fees and Licenses
      9.9      Labor Relations
      9.10    Compliance with Laws
              9.10.1 Environmental Laws
              9.10.2 Suspension and/or Debarment
      9.11    Patents

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 8 of 52

9.12   Incorporation of Provisions
9.13   Material, Storage and Approvals
9.14   Workmanship
9.15   Substitutions
9.16   Use of Managing General Contractor's Equipment
9.17   Privity
9.18   Warranty
9.19   Latent Defects
9.20   Record Keeping

10. Recourse of Managing General Contractor

10.1   Default
10.2   Termination for cause by Managing General Contractor
10.3   Use of Trade Contractor's Equipment
10.4   Right of Set-off
10.5   Termination for Convenience
10.6   Assessment of Damages
10.7   Termination shall not relieve Trade Contractor

11. Bankruptcy

11.1   Termination Absent Cure
11.2   Interim Remedies

12. Suspension by Owner

13. Termination by Owner

14. Delays, Time Extensions and Claims

15. Liquidated Damages

16. Claims

16.1   Claims Relating to Owner
16.2   Other Claims
16.3   Complete Claim Package
16.4   Support Documentation
16.5   Fraudulent or False Claims Statutes or Ordinances
16.6   Compliance with Prime Contract Notice Provisions
16.7   Waiver of Consequential Damages
16.8   Duty to Continue Work

17. Changes

18. Contract Interpretation

    18.1    Inconsistencies and Omissions
    18.2  Severability and Waiver
    18.3  Titles
    18.4  Third Party Beneficiaries
    18.5  Taxes, Charges, Etc.
    18.6  Oral Modifications
    18.7  Not Used

19. Disputes

    19.1  Law and Effect
    19.2  Legal Forum – Venue
    19.3  Joinder
    19.4  Duty of Cooperation
    19.5  Waiver of Jury Trial
    19.6  Damages
    19.7  Attorneys' Fees
    19.8  Third Party Beneficiary

20. Notices

21. Advertising

22. Survival

23. Assignment of Trade Contract

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 10 of 52

# 1. GENERAL REQUIREMENTS

**1.1** All Work described and specified by the Trade Contract Documents shall be performed in strict accordance with the relevant drawings, plans and specifications, and other Trade Contract Documents. All Work shall be performed in strict accordance with the provisions of the Trade Contract Documents. Any information given or statements made to the Trade Contractor by the MGC or others as to the nature or the characteristics of the Work, or as to particular details relating to the Work, shall in no event change the Work to be performed by the Trade Contractor pursuant to the Trade Contract Documents, unless such change is included in a written Change Authorization.

**1.2** The Work agreed to be performed by Trade Contractor includes all Work specifically set forth in the Trade Contract Documents, together with any and all Work necessary to properly complete the Work, and which is necessary to have a properly workable Project, including all work reasonably inferable from the Trade Contract Documents. Trade Contractor agrees to further perform all Work necessary, which is incidental to the Work specified by the Trade Contract Documents without additional compensation, subject to Articles 14 and 16 of Attachment B of the Trade Contract.

**1.3** All Work specified by the Trade Contract shall be performed in accordance with the requirements of the Trade Contract Documents in a skillful and workmanlike manner with incorporated materials and equipment that are new and of the best kind and grade for the purpose intended.

**1.4** Trade Contractor agrees to perform any and all work related to the work required under the Trade Contract Documents which may be directed by the MGC or which may be required by the Owner or by any arbitral, judicial or administrative court or tribunal. Trade Contractor further agrees it shall perform such additional work without additional compensation when such work is required of MGC without additional compensation under direction from the Owner, any arbitral, judicial or administrative tribunal. This provision shall not be construed to bar Trade Contractor from filing a claim asserting that such work is additional work pursuant to this Trade Contract.

**1.5** Without in any way affecting the Owner's responsibilities for existing conditions under Article 4.3.04 of the General Conditions Provisions, the Trade Contractor represents that it has fully examined and analyzed all aspects of the Trade Contract Documents that could affect its performance of the Work and that no issues exist which would affect the progress, performance or price of the Trade Contract. Trade Contractor represents and agrees that it enters into the Trade Contract on the basis of its own examination, investigation and evaluation of all such Trade Contract Documents and not in reliance upon any opinions or representations of the MGC or the Owner, its Design Professionals(Architects and Engineers), or any of their respective officers, agents or employees.

**1.6** Without in any way affecting the equitable adjustment entitlement section in Article 6.9.01 of the General Conditions Provisions, Trade Contractor shall perform the Work and shall cause its subcontractors and suppliers, at any tier, to perform the Work in strict accordance with the requirements of the Trade Contract Documents, and in accordance with all applicable laws, including but not limited to applicable construction codes, as they may be amended from time to time ("Applicable Laws"), as they relate to the Work. By executing this Trade Contract, Trade Contractor represents and warrants that it is familiar with all Applicable Laws that govern the Work. In the event that work is deemed by any governing authority, including the building department, not

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 11 of 52

to comply with Applicable Laws or codes, the Trade Contractor shall bring such Work into compliance, at no additional cost to MGC, subject to Articles 14 and 16 of Attachment B of the Trade Contract. Governing authority shall be defined as any local, state or federal governmental authority or agency empowered to regulate compliance of any code, ordinance, law and/or regulation governing the Work or the construction of the Program.

2. **TIME**. **TIME IS OF THE ESSENCE** for all Work specified or required by the Trade Contract Documents. Trade Contractor agrees that the performance of all Work required by the Trade Contract Documents shall be completed within the time specified within the schedules which are furnished from time to time by MGC ("Schedule of Work"). Trade Contractor shall proceed with each and every part of this Trade Contract in a prompt and diligent manner.

3. **SCHEDULE OF WORK**. Trade Contractor acknowledges that it has received Attachment "E" which sets forth the Milestones and agrees that it will perform the Work, pursuant to and in accordance with the Schedule of Work, including updates and changes to the Schedule of the Work, so as not to delay MGC in the performance of the Prime Contract, in achieving the Contract Time, Annex Milestones and Milestones or delay other contractors in the performance of their work. Trade Contractor shall be bound by the Schedule of Work. Trade Contractor shall provide MGC with any requested scheduling information for the Work including but not limited to information to create the detailed schedule, schedule of values and necessary updates, all in accordance with Specification Section 01310.

4. **SCHEDULE CHANGES**. Trade Contractor recognizes that MGC has the right to make changes in the Schedule of Work and otherwise determine and decide, order and priority in which the various portions of the Work shall be performed, and all other matters relating to the timely performance of the Work. Subject to Articles 14 and 16 of Attachment B of the Trade Contract, Trade Contractor, without additional compensation, shall perform the Trade Contract at such times, in such order and in such manner as MGC may direct. The current, updated and valid schedule for the entire Program is available for Trade Contractor's inspection and use at the MGC's field office. Therefore, it is the Trade Contractor's responsibility to maintain its awareness of the most current Program schedule and Schedule of Work, and to plan and perform its Work accordingly. Trade Contractor shall commence, continue and complete its performance so as not to delay MGC in completion of its obligations as provided in the Prime Contract.

In cases where a schedule indicates an adverse impact on the Program's Substantial Completion date, Trade Contractor, at MGC's request, shall assist MGC in analyzing reasonable means to maintain the Contract Time. Trade Contractor, at MGC's request, shall assist the MGC in providing the Owner with available alternatives for maintaining the MGC Construction Schedule, the associated costs and recommended course of action.

5. **COORDINATION OF WORK**. It is the responsibility of Trade Contractor to coordinate its Work with all other contractors, trade contractors, subcontractors and suppliers so as not to delay, interfere with or damage such other contractors', trade contractors', subcontractors' and suppliers' work or performance thereof. If Trade Contractor should fail to fulfill this obligation, then Trade Contractor shall be directly responsible to such other entity for all resulting damages and shall save and hold harmless, defend and indemnify MGC and Owner from and against all damage that may arise therefrom. If other contractors, trade contractors, subcontractors or suppliers should delay, interfere or damage Trade Contractor's Work, or cause the cost of performing same to increase or cause construction delay, then Trade Contractor may seek compensation from such other

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 12 of 52

contractor, trade contractor, subcontractor or supplier directly, and shall not have any right to seek payment for same from MGC.

## 6. NOT USED.

## 7. SUFFICIENT WORK FORCE REQUIREMENTS.

**SUFFICIENT WORK FORCE REQUIREMENTS**. Trade Contractor shall furnish sufficient labor forces, equipment and materials to assure proper performance of the Trade Contract in strict compliance with the Schedule of Work. Trade Contractor shall, from time to time, on demand of MGC, give adequate evidence to MGC to substantiate the planned performance and progress of the Work and the various parts thereof. Subject to Articles 14 and 16 of Attachment B of the Trade Contract, Trade Contractor shall promptly increase its workforce, accelerate its performance, work overtime, Saturdays, Sundays and/or holidays, all without additional compensation, if, in the opinion of MGC, such effort is necessary to maintain proper progress. Subject to Articles 14 and 16 of Attachment B of the Trade Contract, no premium time will be acknowledged or paid for such additional hours worked unless pursuant to a written agreement by MGC and Owner. Trade Contractor shall neither delay nor adversely affect the performance of MGC's obligations as provided in the Prime Contract.

## 8. MANAGING GENERAL CONTRACTOR'S OBLIGATIONS

8.1 **Obligations Derivative**. MGC owes no greater duty or obligation to Trade Contractor than that which is provided for in the Trade Contract Documents, which unless specifically stated otherwise, shall never be greater than the obligations and responsibilities which Owner owes to MGC pursuant to the Prime Contract, relating to the Trade Contractor's Work.

8.2 **Authorized Representative**. MGC shall designate one or more persons who shall be MGC's authorized representatives on site and off site. Such authorized representative(s) shall be the only person(s) Trade Contractor shall look to for instructions, orders or directions on behalf of MGC.

8.3 **Storage Allocation**. See Article 4.12 of the General Conditions Provisions.

8.4 **Timely Communications**. MGC shall transmit, with reasonable promptness, all submittals, including but not limited to shop drawings, models, technical data, transmittals, written approvals or communications relating to the Work or materials.

## 9. TRADE CONTRACTOR'S OBLIGATIONS

9.1 **Obligations Derivative**. Trade Contractor acknowledges and agrees that it has read the Prime Contract and all contract documents defined therein, and Trade Contractor agrees to be bound to and to assume toward MGC all of the obligations and responsibilities that MGC assumes in and by the aforesaid documents toward Owner, insofar as they are applicable to this Trade Contract, unless any terms are modified by this Trade Contract. In applying such obligations and responsibilities of the Prime Contract to the Trade Contractor, "Managing General Contractor" shall be substituted for "Owner" and "Trade Contractor" shall be substituted for "Managing General Contractor and/or Contractor".

9.2 **Trade Contractor's Representative**. Trade Contractor shall have a competent representative at the site at all times who shall have absolute authority to act in all respects on behalf of and for Trade Contractor (hereafter "Representative"). Trade Contractor shall also have a

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 13 of 52

competent trained employee on the site at all times who can make safety decisions (hereafter "Jobsite Safety Manager"). The name of the Representative and the Jobsite Safety Manager shall be furnished to MGC before commencement of the Work and MGC shall be notified in writing of any changes of personnel at least 24 hours in advance of said change. Trade Contractor shall not replace said Representative and/or Jobsite Safety Manager without the MGC's approval.

**9.3** **Responsibilities**. Trade Contractor shall furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools, and scaffolding as are necessary for the proper performance of the Work. Trade Contractor shall be responsible for taking field dimensions, providing tests, ordering materials and all other actions as are required to meet the Schedule of Work.

**9.4** **Coordination**. In the performance of the Work, Trade Contractor shall comply with all of the provisions of the Trade Contract Documents including but not limited to:

a) cooperation with MGC and all others whose work may affect the Work;
b) specific notation and immediate advice to MGC of any such work which may adversely affect the Work; and
c) participation in the preparation of coordination drawings and work schedules.

**9.5** **Submittals and Shop Drawings**. Trade Contractor shall prepare, review, approve and submit to MGC for review and approval by Architect/Engineer (A/E) all shop drawings, submittals, product samples, test results, installer's instructions, Miami-Dade County Product approvals as required, along with certificates and all other submittals required by the Trade Contract Documents with reasonable promptness and in such a sequence as to cause no delay to the Work or the Program. Review and approval of such submittals by A/E, MGC or Owner shall not relieve Trade Contractor of liability for any deviations from the requirements of the Trade Contract Documents unless the Trade Contractor has notified MGC of such deviation by specific notation of the deviation in writing, separate from the submittal and the A/E or Owner has given written approval specifically referring to the deviation. The Trade Contractor shall assume all risks of correcting or replacing Work, equipment or materials, if Trade Contractor performs Work requiring such submittals before the respective submittal has been approved by the A/E, MGC or Owner. The shop drawings or other submittals shall bear the signature and seal of a licensed professional engineer registered in the State of Florida, when so required by the specifications or any authorities having jurisdiction. Trade Contractor shall be responsible for the accuracy of all details and criteria set forth in the shop drawings and other submittals and warrants to MGC that they are in compliance with all applicable laws, ordinances, codes and other standards as referenced in the Trade Contract Documents, as well as the criteria established for the Work as reflected in the Trade Contract Documents. The Trade Contractor shall not be relieved of responsibility for any errors or omissions in the shop drawings and other submittals by approval thereof by the A/E, MGC or Owner. Subject to Article 16 of Attachment B of the Trade Contract, all shop drawings and other submittals shall be revised as may be necessary at Trade Contractor's sole cost and expense. Subject to Article 16 of Attachment B of the Trade Contract, any additional equipment, material, devices or redesigns which may be required to obtain all required permits or other approvals from authorities having jurisdiction for the construction of the Work shall be furnished by Trade Contractor at its sole cost and expense.

**9.6** **Safety**. Trade Contractor has been hired as an expert in its trade and agrees that during the performance of the Trade Contract, it is solely responsible for compliance with all

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 14 of 52

applicable federal, state and local safety laws, rules and regulations established pursuant to the Federal Occupational Safety and Health Act of 1970; the Florida Occupational, Safety and Health Act; the Florida Trench Safety Act; and all amendments thereto. Trade Contractor shall have or develop and adhere to a safety program and a hazardous material communication program that must be submitted to MGC's Safety Manager prior to starting the Work. Trade Contractor shall further assure itself that its employees, subcontractors and suppliers have the appropriate OSHA and ANSI approved safety equipment and that any tools or equipment which may be owned by Trade Contractor or leased or loaned to Trade Contractor by MGC or some other third party are in good order and in compliance with OSHA standards and any other federal, state or local law designed to protect the safety of persons at the jobsite. Trade Contractor agrees to indemnify and hold MGC harmless from any penalties, fines, corrective actions, violations, costs, expenses or losses resulting from non-compliance, acts of commission or omission by Trade Contractor, its agents, employees and assigns in failure to comply with such laws, rules and regulations, including, without limitation, legal fees or the awards of courts or other bodies and the costs of settlement of claims incurred by MGC including, but not limited to, those arising out of property damage, injuries or death. In situations where imminent danger exists, Trade Contactor must exercise all necessary safety precautions including and up to ceasing operations.

  **9.6.1 Safety and Clean-Up**. Trade Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work and shall be responsible for the safety of all Trade Contractor's employees, subcontractors, vendors and suppliers, at any tier. Trade Contractor shall further follow MGC's safety and clean-up directions, and (a) at all times keep the site free from debris, hazardous materials and unsafe conditions resulting from the Trade Contractor's Work; (b) generally clean each work area prior to discontinuing work; (c) clean and remove any paint marks, spills, stains, rust, marks, oil or silt and deposits on or about newly constructed work caused by Trade Contractor; (d) clean, and remove from the site and adjacent area, all surplus and discarded material, equipment and temporary structures relating to Trade Contractor's Work; and (e) remove debris and objectionable material from areas used or disturbed by performance of Work. If Trade Contractor fails to immediately commence compliance with the safety duties required by the Trade Contract Documents or by law or to commence clean-up duties within 24 hours after receiving written notice from MGC of noncompliance, MGC may implement such safety or clean-up measures without further notice to Trade Contractor and deduct the reasonable total costs thereof, together with reasonable overhead, profit and attorneys' fees, from any amount due or to become due to Trade Contractor.

  **9.6.2 Safety Meetings**. Trade Contractor's Jobsite Safety Manager shall coordinate, promote and conduct a weekly safety meeting while Trade Contractor is engaged in activities for the Work. The minutes of the safety meeting and an attendance roster must be turned in to MGC's Safety Manager on a weekly basis or such other frequency as MGC may direct.

  **9.7  Protection of the Work**. Subject to Trade Contractor's rights to recover from appropriate Insurers and subject to Articles 12.3.01, 12.3.07 IV and 13A.1 8 of the General Conditions Provisions, Trade Contractor shall, at its own expense, fully protect, insure and secure its Work from injury or damage until final acceptance of the Work. Any damage caused to the Work prior to final acceptance of the Work shall be immediately corrected and rectified by Trade Contractor at its sole expense. Trade Contractor agrees to adequately and properly protect its Work by lights, supports, barriers, guards or by whatever other means are appropriate, so as to

POJV – North Terminal Development Consolidation Program  November 6, 2007
Trade Contract SC-00068 – Beauchamp Construction Company  Section 00031
Project 747B  Version 5
Page 15 of 52

avoid injury or damage to persons or property, and to be directly responsible for damages to person and property occasioned by any failure to do so, and for any negligence or breach in the performance of its Work or obligations. Trade Contractor also shall take all necessary precautions to properly protect the Work and the work of others from damage caused by vandalism or Trade Contractor's operations. Should Trade Contractor's operations cause or should Trade Contractor permit preventable vandalism to cause, damage to the Work or property of the Owner, MGC or others, Trade Contractor shall promptly remedy such damage to the satisfaction of MGC. If the Trade Contractor fails to immediately remedy such damages, then the MGC may remedy the damage caused thereby and deduct the reasonable cost thereof from any amounts due or to become due Trade Contractor including reasonable overhead, profit and attorneys' fees. Trade Contractor shall have primary responsibility and liability for and defend and indemnify MGC, other trade contractors and the Owner against any damages or losses which may be incurred or claimed. MGC shall not be liable for any loss or casualty incurred or caused by Trade Contractor. Trade Contractor assumes all risk of loss for all of the Work regardless of whether such loss is covered in whole or in part by insurance. MGC is not responsible to provide any protective service for Trade Contractor's benefit and is not liable for any loss or damage to the Work.

**9.7.1 Impending Weather Protection**. Trade Contractor has an obligation to protect its property, materials and Work and to prevent its property, materials and Work from causing damage to other property, work and materials at the site. Trade Contractor may receive orders from the MGC, the Owner or other governmental authority and will comply with such orders. Such orders frequently arise when tropical storms and hurricanes are approaching. In such event, Trade Contractor shall protect its Work at its sole cost and expense and will not be entitled to additional compensation from MGC or Owner, unless otherwise provided in the General Conditions Provisions. Should Trade Contractor fail to comply with any orders of MGC, Owner or governmental authority, the MGC shall have the right, but not the obligation, to take protective or corrective action in which event all costs incurred by the MGC, in hiring others to protect Trade Contractor's property, materials and Work shall be charged to Trade Contractor including reasonable overhead, profit and attorneys' fees.

**9.8 Permits, Fees and Licenses**. Trade Contractor shall give adequate notice in writing, with copies furnished to MGC, to the proper authorities as required for the performance of the Work, and shall secure and pay for all permits, fees, licenses, assessments, inspections (permits, fees, licenses, assessments and inspections may be reimbursed in accordance with General Conditions Provisions Article 6.7) and taxes necessary to complete the Work in accordance with the Trade Contract Documents.

**9.9 Labor Relations**. Trade Contractor shall do whatever is necessary in the prosecution of its Work to assure harmonious labor relations on the site and to prevent strikes or other labor disputes. Trade Contractor shall fully abide by all labor agreements and jurisdictional decisions presently in force or subsequently executed with or by MGC. Trade Contractor covenants and agrees that there will be no work stoppages or slowdowns, walkouts, disruptions of work, interferences of work, picketing or any other disruptions similar in nature during the construction of this Program which is caused by Trade Contractor. If the Trade Contractor breaches this covenant and such breach shall cause a stoppage, slowdown or disruption of work at the site, the Trade Contractor shall be liable for all damages suffered by the MGC.

**9.10 Compliance with Laws**. Without in any way affecting the equitable adjustment entitlement section in Article 6.9.01 of the General Conditions Provisions, Trade Contractor agrees to be bound by and, at its own cost, to comply with all federal, state, county, local, municipal as well

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 16 of 52

as any other governing jurisdictions' and authorities' laws, rules, statutes, codes, directives, executive orders, codes, ordinances and regulations (collectively referred to as "law") applicable to the Work including, but not limited to, equal employment opportunity, disadvantaged business enterprise, community small business enterprise, safety, health and all other laws which MGC must comply with as part of its performance of the Prime Contract. Trade Contractor further agrees to pay all fees and taxes, including sales and use taxes, imposed by federal, state or local law for use of equipment, use of materials, employment insurance, pensions, retirement funds, or any other purpose. Where so required by law or the Prime Contract, all provisions of laws, rules, regulations and executive orders are hereby incorporated into and made a part of the Trade Contract Documents, including but not limited to, Executive Order 11246, particularly Section 202 thereof, if applicable; the Americans with Disabilities Act and all regulations promulgated thereunder; Title VII of the Civil Rights Act of 1964; and the Age Discrimination in Employment Act. See also Article 6.15 of the General Conditions Provisions for certain additional requirements.

Trade Contractor agrees and represents that its knowledge of its trade is superior to MGC's and that MGC is relying on Trade Contractor to determine compliance with the law within Trade Contractor's trade and specialty. Trade Contractor shall be solely liable for any deviation from the law even if its Work is in strict compliance with the Trade Contract Documents. Without in any way affecting the equitable adjustment entitlement section of Article 6.9.01 of the General Conditions Provisions and subject to Articles 14 and 16 of Attachment B of the Trade Contract, Trade Contractor bears the risk and sole responsibility for all costs necessary to ensure that its Work is in full compliance with the law. Trade Contractor shall be liable to MGC and the Owner for all loss, cost and expense attributable to any acts of commission or omission by Trade Contractor, its subcontractors, suppliers, employees and agents resulting from the failure to fully comply with any laws, including, but not limited to fines, penalties or corrective measures.

9.10.1 **Environmental Laws**. Trade Contractor shall comply with all federal, state, county, and local environmental statutes or ordinances, or other applicable environmental regulations, including permit conditions, dealing with or relating to the environment that may apply for the performance of Trade Contractor's Work, either at the site or off-site. Trade Contractor shall be responsible for monitoring its own forces (labor, equipment, materials), its subcontractors and suppliers, at all tiers, in order to guarantee that the Work will be free of any adverse environmental impacts, including but not limited to impacts resulting from fuel spills, oil spills, mishandling of garbage or any other waste materials, discharges into navigable waters, air emissions, et cetera. Trade Contractor shall immediately inform MGC and the governing authority having jurisdiction of any activity, which may have any environmental impact, contamination or accident that in any way relates to Trade Contractor's Work, its performance, act or omission. Subject to Trade Contractor's rights to recover from appropriate Insurers and subject to Articles 12.3.01 and 12.3.07 IV of the General Conditions Provisions and subject to Articles 14 and 16 of Attachment B of the Trade Contract, if environmental impact or contamination is a result of Trade Contractor's Work, actions or failure to act, Trade Contractor shall take appropriate measures to clean up the impact or contamination, using a qualified entity to perform environmental related work, in each area that requires environmental remediation measures or removal of hazardous materials. Subject to Trade Contractor's rights to recover from appropriate Insurers and subject to Articles 12.3.01 and 12.3.07 IV of the General Conditions Provisions and subject to Articles 14 and 16 of Attachment B of the Trade Contract, Trade Contractor shall be responsible for all liabilities and costs related to the environmental clean-up and removal and disposal of contamination caused by Trade Contractor, including but not limited to costs associated with delays and/or impacts to the Schedule of Work and related damages, including but not limited to loss of productivity to MGC and/or third parties. In the case of hazardous materials contamination caused by the Trade Contractor's Work, Trade

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 17 of 52

Contractor shall be deemed to be the generator of any hazardous substances or hazardous waste removed from the property, and Trade Contractor shall be responsible to sign the manifest accompanying such hazardous substances or hazardous waste. Subject to Trade Contractor's rights to recover from appropriate Insurers and subject to Articles 12.3.01 and 12.3.07 IV of the General Conditions Provisions and subject to Articles 14 and 16 of Attachment B of the Trade Contract, the cost of the legal disposal of such material shall be at the Trade Contractor's expense.

**9.10.2 Suspension and/or Debarment**. Trade Contractor represents that neither it, nor its principals, subcontractors, or suppliers, at any tier, are presently debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from bidding, including being on the Miami-Dade County Debarred Business List, the State of Florida's Convicted Vendor List, or the Federal List of Parties Excluded from Federal Procurement or Non-Procurement, by State of Florida, Miami-Dade County or federal department or agency. Trade Contractor shall require that all subcontractors and suppliers, at any tier, for this Program make the same representation to Trade Contractor prior to starting to provide any services, work or material for the Program. Furthermore, Trade Contractor shall immediately notify the MGC if it or its principals, subcontractors or suppliers, at any tier, are added to any of the above lists or are convicted of a Public Entity Crime in accordance with Florida Statutes.

**9.11 Patents**. Except as otherwise provided by the Trade Contract Documents, Trade Contractor shall pay all royalties and license fees, which may be due on the inclusion of any patented materials in the Work. Trade Contractor shall indemnify, defend and hold MGC and Owner harmless from all suits for claims for infringement of any patent, trademark or copyright rights arising out of the Work, which may be brought against MGC or Owner and shall be liable for all such claims, losses, costs, expenses and attorneys' fees. If the Trade Contractor has reason to believe that the design, process or product specified in the Trade Contract Documents is an infringement of a patent, it shall promptly inform the MGC in writing.

**9.12 Incorporation of Provisions**. Trade Contractor hereby agrees to incorporate into any subcontracts or purchase orders it has with any other party relative to the Work, all those provisions required by law or by the Prime Contract to be incorporated therein and all those provisions of the Trade Contract Documents which affect the rights of MGC, including but not limited those provisions contained in Article 5 of the General Conditions Provisions.

**9.13 Material, Storage and Approvals**. All materials used in the Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the Work and shall be new except such materials as may be expressly provided in the Plans and Specifications to be otherwise. If Owner determines that it will accept nonconforming materials, MGC shall be entitled to a credit for the non-conformity, plus all other costs incurred. Trade Contractor must be prepared, at all times to prove, within commercial norms, the exact quantities and qualities of the materials and equipment purchased, used or to be used in the Work. If Trade Contractor is assigned a storage area for its equipment, material and tools, it shall not store any item outside of the designated area. Trade Contractor shall be responsible for the receipt, delivery, unloading, hoisting, storage, movement, warehousing, protection, insurance and all other risk of loss relating to any materials, tools or equipment it is to furnish, install, provide or have provided to it under the Trade Contract Documents. If Owner or MGC furnishes material to Trade Contractor, Trade Contractor shall be obligated to inspect all material and equipment at time of delivery and sign an itemized receipt for such material. Trade Contractor shall be responsible to notify MGC in writing, within 72 hours of delivery, of any defects or nonconformity in the material or equipment so received or delivered. Whenever Trade Contractor is responsible to load and/or transport the material and or

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 18 of 52

equipment to the site, Trade Contractor must notify MGC in writing prior to loading of the material of any defects or nonconformity in the material or equipment. Failure to notify MGC shall be deemed an acknowledgment and acceptance of the material as being in accordance with the Trade Contract Documents. Trade Contractor shall be liable for any damages incurred by MGC as a result of its failure to so notify MGC. In the event the scope of the Work includes the installation of materials or equipment furnished by others, it shall be the responsibility of Trade Contractor to examine the items so provided and to handle, store and install the items with such skill and care as to ensure a satisfactory and proper installation. MGC has no responsibility for the safekeeping, theft or damage of any of Trade Contractor's materials, supplies, etc., including materials and equipment provided to Trade Contractor by others. Subject to Trade Contractor's rights to recover from appropriate Insurers and subject to Article 12.3.07 IV of the General Conditions Provisions, damage, loss or theft of any such Owner or MGC furnished materials or equipment shall be replaced in kind by the Trade Contractor at its own expense and any delay in the progress of the work caused by damage, loss or theft of such material or equipment shall be the responsibility of the Trade Contractor.

   **9.14** **Workmanship**. Every part of the Work shall be executed in strict accordance with the Trade Contract Documents in the most sound, workmanlike and skillful manner. The Trade Contractor shall supervise and direct the Work using its best skill and attention. Trade Contractor shall at all times enforce strict discipline and good order among its employees and shall not employ any unfit person or anyone not skilled in the task assigned. Should Trade Contractor's use of a class of workers, materials or methods result in a higher cost of performance, beyond normal industry standards, to MGC or other trade contractors, Trade Contractor shall be liable to MGC or the other trade contractors for the higher cost of performance. Trade Contractor shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Trade Contract Documents. All workmanship and materials shall be of the highest quality and kind unless specifically provided otherwise in the Trade Contract Documents. Trade Contractor shall within 24 hours after receiving specific written notice from the MGC, commence to take down and remove any designated portion of its Work which is condemned, disapproved or is questioned as not being in strict compliance and conformity with the requirements of the Trade Contract Documents. Subject to Articles 14 and 16 of Attachment B of the Trade Contract, Trade Contractor shall, at its own expense, promptly correct and rectify same. If the Owner determines that it will accept non-conforming Work, the MGC shall be entitled to a credit for the non-conformity plus all other costs incurred as a result of such non-conforming Work. Trade Contractor shall promptly perform and complete within thirty (30) days any and all punch list work submitted to it by MGC.

   **9.15** **Substitutions**. No substitutions shall be permitted in the Work to be provided by Trade Contractor unless permitted by the Owner and MGC. In the event a substitution is desired, Trade Contractor shall first obtain approval for the substitution in writing from MGC and Owner in accordance with provisions of the Trade Contract Documents. Trade Contractor shall indemnify MGC for any increased costs incurred by MGC, Owner or other trade contractors as a result of any substitution, whether or not Trade Contractor has obtained approval thereof.

   **9.16** **Use of Managing General Contractor's Equipment**. Trade Contractor, its agents, employees, subcontractors or suppliers, at any tier, shall not use MGC's equipment without the express written permission of MGC. Should Trade Contractor, or any of its agents, employees, suppliers or subcontractors, at any tier, utilize (whether or not authorized by the MGC) any machinery, equipment, tools, scaffolding, hoists, lifts or similar items (hereafter "Equipment") owned, leased or under the control of MGC, regardless of MGC providing the operator or labor to use the Equipment, Trade Contractor shall provide competent supervision. Unless the loss or

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 19 of 52

damage is caused negligence, recklessness or intentional wrongful misconduct of the MGC's operator, Trade Contractor shall be liable to MGC for any loss or damage (including property, personal injury or death) which may arise from such use and shall indemnify, defend and hold MGC, Owner and other trade contractors and their agents, employees, suppliers or subcontractors, at any tier, harmless for all damages and liabilities sustained as a result thereof, including attorneys' fees. Nothing in this Article shall limit the Trade Contractor from recovery under the appropriate Insurance policies.

**9.17** **Privity**. Until final completion of the Work, Trade Contractor hereby agrees not to perform any work directly for the Owner, or any tenants thereof, or deal directly with any Owner's representatives in connection with the Program, unless otherwise directed or permitted in writing in advance by MGC. All Work for this Program performed by Trade Contractor shall be processed and handled exclusively under Trade Contract with MGC.

**9.18** **Warranty**. Trade Contractor warrants its Work against all deficiencies and defects in materials or workmanship as called for in the Trade Contract Documents. Whenever Trade Contractor is furnishing materials, equipment, fabricated or manufactured items, the Trade Contractor shall obtain a written warranty from such manufacturer, fabricator or equipment and material supplier, in a form acceptable to MGC and Owner, for a minimum period of one year from the date of the Substantial Completion of the Work or any longer period that may be required in the Trade Contract Documents. The Owner and MGC shall be named as beneficiaries of such warranties. The Trade Contractor shall secure such warranties and deliver the same to MGC at the time of Substantial Completion of the Work, which warranties are not in lieu of Trade Contractor's warranty and latent defect obligations. Trade Contractor agrees to satisfy such warranty obligations which appear within the guarantee or warranty period established by the Trade Contract Documents without additional cost to the Owner or MGC. Unless a longer warranty period is required by any of the Trade Contract Documents, the Trade Contractor shall furnish a warranty of its work and materials in favor of MGC and Owner as described above for a period of one year from the date of Substantial Completion or Beneficial Occupancy (as applicable) of all of the Work under the Trade Contract Documents. At time of Substantial Completion, the Trade Contractor shall execute the MGC's standard warranty included in the General Conditions Provisions. The Trade Contractor further agrees to execute any special guarantees or warranties that shall be required for Trade Contractor's Work as provided in any of the Trade Contract Documents at the time of Substantial Completion of the Work. The provisions for guarantee or warranty hereunder shall inure to the use and benefit of Owner and MGC and may be enforced by either of them without necessity for any assignment of rights hereunder by MGC when enforcement is sought by Owner. Nothing herein limits Trade Contractor's liability for any other or additional warranty or guarantee which may be imposed or required by statute or otherwise.

**9.19** **Latent Defects**. Trade Contractor shall correct all latent defects in the Work or caused by the performance of the Work which are discovered within time limits set forth in the applicable laws. Trade Contractor shall be liable to MGC for all damages sustained by the Owner, MGC and any others resulting from such latent defects. If Trade Contractor fails to fulfill its obligations within ten (10) days of notice, MGC has the right to perform the work by others at the expense of Trade Contractor, and Trade Contractor agrees to pay MGC the cost plus overhead and profit, including attorneys' fees.

**9.20** **Record Keeping**. Trade Contractor shall comply with all record keeping requirements of the Trade Contract Documents.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 20 of 52

## 10. RECOURSE OF MANAGING GENERAL CONTRACTOR

**10.1. Default:** Should Trade Contractor fail to perform in strict accordance with the Trade Contract Documents where or as MGC may so direct, or should Trade Contractor become insolvent, fail to supply enough properly skilled workers or proper materials; fail to maintain the Schedule of Work or any part thereof; or act in such a fashion where MGC reasonably concludes the Trade Contractor will not be able to maintain the Schedule of Work, or any part thereof; or fail to make prompt payments for its workers, subcontractors, or suppliers, at any tier; or should Trade Contractor disregard laws, ordinances, rules, regulations or orders of any public authority having jurisdiction; or should Trade Contractor be unable or fail to pay its obligations as they become due; or in any other respect in the opinion of MGC, fail to properly prosecute and perform any part of its Work, fail to exert its best performance efforts, be involved in labor disputes or be in default or terminated under any other contract with MGC, then such event shall constitute a material breach by Trade Contractor of the Trade Contract. In the event of a breach of the Trade Contract by Trade Contractor, MGC shall hand deliver, facsimile copy or forward by U.S. certified mail to Trade Contractor a written notice of default. Within three (3) days after receipt of written notice of default, should Trade Contractor fail to commence and continue satisfactory correction of such default with diligence and promptness, then MGC shall have the right to any or all of the following remedies without prejudice to any of its rights or remedies:

(a)     take permanent possession of Trade Contractor's materials, implements, equipment, appliances, tools, records, drawings, permits, and other items intended for performance of the Trade Contract, whether or not located on the site in order to assure its availability for completion of the Work and mitigate Trade Contractor's damages arising out of Trade Contractor's breach of Trade Contract which Trade Contractor hereby assigns and transfers to MGC for such purpose subject only to MGC exercising its remedies in this Article;

(b)     exercise all rights and benefits of Trade Contractor under any subcontracts or material purchase orders issued by Trade Contractor in connection with the Work including, but not limited to, the right to make payments, employ all subcontractors and material suppliers, obtain materials previously manufactured or fabricated for incorporation in the Work, including all warranties and guarantees of subcontracts and material suppliers to Trade Contractor. MGC shall charge the cost thereof to Trade Contractor who shall be liable for the payment of same including reasonable overhead, profit and attorneys' fees;

(c)     supply such number of workers and quantity of materials, equipment and other facilities as MGC deems necessary for the completion of the Work, or any part thereof which Trade Contractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to Trade Contractor who shall be liable for the payment of same including overhead, profit and attorneys' fees;

(d)     contract with one or more additional trade contractors or other contractors to perform such part of the Work as MGC shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to Trade Contractor who shall be liable for the payment of same including overhead, profit and attorneys' fees;

(e)     withhold payment of any monies due Trade Contractor pending completion of the Work;

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 21 of 52

(f)     in the event of an emergency affecting the safety of persons or property, MGC may proceed as above without notice; and

(g)     terminate this Trade Contract as provided herein.

**10.2    Termination by Managing General Contractor**.  If Trade Contractor fails within three (3) days of receipt of the notice issued under Article 10.1 to commence and satisfactorily continue correction of default with diligence and promptness, without prejudice to any other remedy the MGC may have, MGC has the right to terminate the Trade Contract and complete the Trade Contractor's Work by whatever method the MGC deems appropriate, including any or all methods referenced in Article 10.1.  All costs incurred by MGC in so performing Trade Contractor's Work, including reasonable overhead, profit and attorneys' fees together with any damages or losses (direct and indirect, delay and consequential), MGC suffers as a result of Trade Contractor's default or termination, shall be deducted from any remaining amounts due or to become due to Trade Contractor.  In addition to other damages that may be incurred by MGC, Trade Contractor shall be liable for the payment of any amount by which such amounts may exceed the unpaid balance of the Trade Contract Price.  No payment, if any, shall be due to the Trade Contractor until all obligations under the Trade Contract are fulfilled.  MGC shall have a lien upon Trade Contractor's materials, implements, equipment, appliances or tools intended for performance of the Trade Contract whether or not located on the site or in the possession of Trade Contractor to allow MGC to complete the Work and to secure payment of any liability of Trade Contractor in excess of the unpaid balance of the Trade Contract Price.

**10.3    Not Used**

**10.4    Right of Set-off**.  The MGC may withhold from the Trade Contractor any amounts due or to become due under this or any other contract between MGC or either of its partners and Trade Contractor for damages incurred as a result of the Trade Contractor default or termination of this Trade Contract.  Notwithstanding any other provision of the Trade Contract Documents to the contrary, in the event of such default or termination of any other contract between MGC or either of its partners and Trade Contractor, the MGC may withhold and set off any amounts due or to become due Trade Contractor under this Trade Contract.  MGC also may withhold payment that otherwise may be due Trade Contractor under this Trade Contract in a sum sufficient to off-set any damages that may be incurred by MGC under any other contract between MGC or either of its partners and Trade Contractor.

**10.5    Termination for Convenience by MGC**.  MGC may, for any reason, terminate the Trade Contract, or any portion thereof, at any time upon written notice to Trade Contractor. In the event MGC gives Trade Contractor such notice, Trade Contractor shall withdraw its employees and equipment from the site on the effective date of termination as specified in said notice (which effective date shall not be less than  five (5) working days after the date of notice) regardless of any claim Trade Contractor may or may not have against MGC. The Trade Contractor's failure to do so shall entitle MGC to bring an action for damages, including attorneys' fees, and/or to bring an action for injunctive relief. In the event of such a termination for convenience and notwithstanding any other provision of the Trade Contract Documents to the contrary, provided the Trade Contractor is not in default, the Trade Contractor shall receive, as its entire and sole compensation, either, at MGC's option, (a) payment for the Work actually performed based on the amount proportionate to the Trade Contract Price or in the event the amount proportionate to the Trade Contract Price cannot be agreed between MGC and Trade Contractor, (b) its actual and reasonably necessary

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 22 of 52

Direct Costs of performing the Work to the date of termination plus reasonable demobilization costs, as determined by an audit of Trade Contractor's records, plus fifteen percent (15%) as reasonable markup for overhead and profit. MGC and Trade Contractor both agree option (a) referenced above is the preferred option, and MGC and Trade Contractor will make a good faith effort to come to an agreement about the amount proportionate to the Trade Contract Price. MGC will utilize option (b) only if both parties cannot come to a mutual agreement on the amount proportionate to the Trade Contract Price. Actual costs include the final value of all bonafide irrevocable orders for materials and equipment not delivered to the construction site as of the date of cancellation. Such materials and equipment must be delivered to the MGC at a site or location designated by the MGC prior to release of payment for such materials and equipment. The amount due under option (a) or (b) shall be reduced by prior payments made to Trade Contractor and increased by any amounts recovered from Owner by MGC in regard to any Trade Contractor claims of record as of the date of termination, but in no event shall such amounts paid and payable hereunder exceed the Trade Contract Price, as amended. The remedy provided under this paragraph shall be Trade Contractor's exclusive remedy under this Trade Contract against MGC. The Trade Contractor shall make its records available at reasonable times and places for the MGC's audit. The Trade Contractor shall not be entitled to any loss of anticipated profits. Upon receipt of payments provided for above, the parties hereto shall have no further obligation to each other except for Trade Contractor's obligations to perform corrective, warranty, or latent defect obligations relating to the terminated for convenience Work actually performed by Trade Contractor or any of its subcontractors and suppliers, at any tier, prior to termination and to indemnify, defend and hold harmless MGC as provided for in the Trade Contract Documents. In the event any termination or default of the Trade Contractor pursuant to this Trade Contract or the General Conditions Provisions is later determined to have been improper, such termination or default shall be automatically converted to a termination for convenience under this paragraph and the Trade Contractor shall be limited in its recovery strictly to the compensation provided for in this paragraph.

**10.6 Assessment of Damages.** If the amount due the MGC as a result of Trade Contractor's termination or default pursuant to the Trade Contract Documents is greater than remaining amounts due or to become due to Trade Contractor under the Trade Contract, then the surety providing the Trade Contractor's Performance and Payment Bond will pay such difference.

**10.7 Continuation of Work.** Termination of the Trade Contract or a portion thereof shall not relieve Trade Contractor of its responsibilities for the completed Work; nor shall it relieve Trade Contractor's surety of its obligations for and concerning any claim arising out of the Work performed.

## 11 BANKRUPTCY:

**11.1 Termination Absent Cure.** Upon the filing of any Petition for voluntary or involuntary bankruptcy by or against Trade Contractor, the appointment of a receiver or trustee for Trade Contractor, or upon Trade Contractor making an assignment for the benefit of creditors, MGC may terminate this Trade Contract upon providing Trade Contractor three (3) days written notice by hand delivery, facsimile copy or U.S. certified mail, unless Trade Contractor, its surety or the trustee:

      (a)    promptly cures all defaults;

      (b)    provides adequate assurances of future performance;

      (c)    compensates MGC for actual pecuniary loss resulting from such defaults; and

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 23 of 52

(d)     assumes the obligations of the Trade Contractor under this Trade Contract within the statutory time limits.

**11.2     Interim Remedies**.  If Trade Contractor is not performing in accordance with the Schedule of Work upon the expiration of the three (3) day notice period, MGC, while awaiting the decision of Trade Contractor or its trustee to reject or to accept this Trade Contract and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under the Trade Contract Documents as are reasonably necessary to maintain the Schedule of Work and protect the interest of the MGC.  MGC may offset against any sums due or to become due to Trade Contractor, all costs incurred in pursuing any of the remedies provided hereunder including, but not limited to reasonable overhead, profit and attorneys' fees, together with damages or losses MGC suffers as a result of Trade Contractor's insolvency.  Trade Contractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Trade Contract Price.

**12     SUSPENSION BY OWNER**.  Should the Owner suspend the Prime Contract or any part of the Prime Contract, which includes all or any portion of the Work, MGC shall so notify Trade Contractor in writing immediately by facsimile and/or U.S. certified mail and upon receipt of said notice, Trade Contractor shall immediately suspend the affected Work.  MGC's liability to Trade Contractor for a suspension by Owner is limited to the extent of MGC's recovery from the Owner on Trade Contractor's behalf.

**13.     TERMINATION FOR CONVENIENCE OR NATIONAL EMERGENCY AS A RESULT OF OWNER'S DIRECTION TO MGC**.  MGC's liability to Trade Contractor for a termination for convenience or national emergency as a result of Owner's direction to MGC is limited to the extent of MGC's recovery from the Owner on Trade Contractor's behalf and payment by Owner is a condition precedent to any obligations on behalf of the MGC to pay Trade Contractor.  Termination of the Trade Contract or a portion thereof under this Article shall not relieve Trade Contractor of its responsibilities for the completed Work nor shall it relieve Trade Contractor's surety of its obligations for and concerning any claim arising out of the Work performed.

**14.     DELAYS, TIME EXTENSIONS AND CLAIMS**

**14.1     Delays and Time Extensions:** Except as otherwise provided by law or unless and to the extent MGC is paid for Trade Contractor's claims by Owner, should Trade Contractor's performance, in whole or in part, be interfered with, re-sequenced, disrupted or delayed, or be suspended in the commencement, prosecution or completion, for reasons beyond Trade Contractor's control and without any fault or negligence on its part contributing thereto, Trade Contractor's sole and exclusive remedy shall be an extension of time in which to complete the Work, provided that Trade Contractor shall have notified MGC in writing of the cause of the delay and the requested time extension within five (5) days of the occurrence of the event, and otherwise complied with the submissions required under the Trade Contract Documents and provided further that a coextensive extension of the Milestone(s), if needed, is given to MGC by the Owner.

**14.2**     Trade Contractor acknowledges the Trade Contract Price is based on the premise that MGC is not liable to Trade Contractor, absent any actual fraud or intentional tortuous act, for any damages or costs due to any delays, acceleration, nonperformance, interference with performance, suspensions, or changes in the performance or sequence of the Work which results in

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 24 of 52

damages including increased overhead, loss of productivity, loss of efficiency or increased total costs, unless and to the extent that the Owner pays for such costs or damages.

**14.3** MGC owes no duty, obligation or liability to the Trade Contractor as a result of any delay, interference, suspension, re-sequencing or other event, except for seeking an extension of time and related damages from the Owner, if the circumstances are appropriate under the Trade Contract Documents. If Trade Contractor fails to fully comply with the provisions of the Trade Contract Documents, including all applicable local and Federal false claims statutes or ordinances, concerning time, cost and damage submissions, MGC is under no obligation to present such submissions to the Owner.

**14.4** MGC may grant an extension of time when a controlling item of work is delayed by factors not reasonably anticipated or foreseeable at the time of execution of the Trade Contract. Such time extension may be allowed only for delays occurring during the time for performance set forth in the current Schedule of Work or authorized extensions thereof. Extensions of Milestones will not be granted for delays due, in whole or in part, to the fault or negligence of Trade Contractor or any entity or person for whom Trade Contractor is responsible.

**14.5** In the event Article 14.1 is not legally enforceable or not actually enforced and Trade Contractor is not limited to the sole and exclusive remedy of an extension of time, Trade Contractor shall only be entitled to Liquidated Indirect Costs as provided in Article 7.6.02 of the General Conditions Provisions in the amount stipulated in Attachment E of the Trade Contract and under no circumstance shall the Trade Contactor be allowed to recover any additional amount for the following items set forth in Article 8.1.10 of the General Conditions Provisions and consequential damages, including but not limited to loss of bonding capacity, loss of bidding opportunities and insolvency.

**14.6** If Trade Contractor should delay, interfere or damage, or threaten to delay, interfere or damage, the progress or performance of the Trade Contract or cause any actual or potential damage or liability to MGC, other trade contractors, subcontractors or suppliers, then Trade Contractor shall be directly responsible to such other entity for all damages and shall be responsible to defend, indemnify and hold MGC harmless from all claims, liability or damages as a result thereof, including reasonable overhead, profit and attorneys' fees. The liability of the Trade Contractor shall not be waived by any assent or acquiescence by the MGC to the Trade Contractor's late performance. In the event any other contractor, trade contractor or supplier should damage the Trade Contractor, the Trade Contractor shall neither seek nor be entitled to any compensation from the MGC, but will seek its damages directly from such other party.

## 15    LIQUIDATED DAMAGES:

**15.1** If Liquidated Damages shall be assessed against the MGC by the Owner due to Trade Contractor's failure to timely complete its Work or any portion thereof in accordance with the Schedule of Work, MGC shall have the right to recover the amount of such Liquidated Damages from Trade Contractor either by deducting such amount from any monies due or which may become due to Trade Contractor or by other means of recovery. In the event that Liquidated Damages are assessed against MGC resulting from the failure of another trade contractor to complete work on time, then MGC shall apportion such Liquidated Damages among the parties whose failure caused such Liquidated Damages to be assessed and MGC's decision shall be final. Liquidated damages, as assessed against MGC resulting from Trade Contractor's failure, are but one item of actual damages that may be incurred by MGC as a result of Trade Contractor's failure

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 25 of 52

to timely complete its Work, or portion thereof, within the Schedule of Work and which MGC may assess against Trade Contractor. The proportionate assessment of Liquidated Damages, as provided in this Article, shall not limit MGC's right to collect from Trade Contractor any additional, actual, direct or indirect damages, including attorneys' fees, incurred by MGC as a result of Trade Contractor's delay.

## 16. CLAIMS

**16.1 Claims Relating to Owner and MGC.** Trade Contractor agrees to make all claims, requests for Change Authorization, requests for time extensions (hereafter "Claim(s)") involving any additional compensation or damages for which Trade Contractor claims is the fault of either MGC or Owner, for which either may be liable, in the manner provided by the General Conditions Provisions and this Trade Contract. In addition to the foregoing, and not by way of limitation, notice of such Claims shall be given by Trade Contractor in writing to MGC within five (5) days of the beginning of the event or non-occurrence of the event for which such Claims to be made, otherwise, such Claim shall be deemed waived. If the Claim involves a request for extension of time, Trade Contractor shall notify MGC in writing of the cause of the delay within five (5) days of the beginning of the event or non-occurrence of the event giving rise to the Claim, otherwise, such Claims shall be deemed waived. Claims for extension of time shall also be governed by Article 14 of this Trade Contract. Additionally, Trade Contractor shall provide MGC with a time impact analysis, in the format and with the content specified in the Trade Contract Documents, within fifteen (15) days after completion of the work that is subject of the claim, otherwise, such Claims shall be deemed waived. For Claims, or portions thereof, for which Owner is or may be liable (Owner Related Claims), Trade Contractor shall have no greater right against MGC than MGC has against the Owner; and MGC shall not be liable to Trade Contractor for any sum in excess of the amount actually received by MGC from Owner for such claims. Any amount received by MGC for Owner Related Claims shall be reduced by MGC's reasonable and proportional costs, expenses, overhead and profit, including attorneys' fees, as applicable, incurred by MGC relating to the claimed Work and/or incurred by MGC in making such Claim on Trade Contractor's behalf unless such MGC costs, expenses, overhead and profit have been recovered.

Upon the written request of Trade Contractor, MGC, on Trade Contractor's behalf, may appeal any ruling or decision of the Owner or institute any action or proceeding to recover damages by reason of any affirmative Claim by Trade Contractor, or by reason of any deduction or refusal to pay by the Owner, for any reason involving the Work or performance of Trade Contractor. Trade Contractor acknowledges that MGC and Owner have agreed to a non-binding Dispute Resolution Board (DRB) system for addressing Owner Related Claims (see Attachment F.7). Trade Contractor agrees to provide all required DRB submissions to the MGC in sufficient time to allow MGC to meet the required DRB submission deadlines which shall be in no event less than three (3) working days prior to such required submission deadlines. Whether in regard to the DRB process or any other action or proceeding regarding an Owner Related Claim, Trade Contractor shall pay all reasonable costs, including attorneys' fees, DRB Board Member fees, and other related DRB costs, attributable thereto and shall render all assistance requested by MGC. Trade Contractor shall be bound by the determination of the Owner or, in the event of an appeal or further action or proceeding (other than a DRB decision), by the determination of same, and shall be entitled only to its proportionate share, if any, of any actual net recovery from Owner by MGC, less MGC's overhead and profit, as applicable and less MGC's reasonable expenses and attorneys' fees in handling said matter. All DRB decisions shall be admissible as evidence in any subsequent court proceeding or other dispute resolution procedures in which the Trade Contractor may be involved with the MGC or Owner (on a pass-through Owner Related Claim basis).

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 26 of 52

Trade Contractor shall post whatever security may be required by MGC to cover MGC's cost and expenses, including reasonable attorneys' fees, DRB Board Member fees, and other related DRB costs, prior to and as a condition precedent to the MGC's proceeding on the Trade Contractor's behalf. Trade Contractor's written request to appeal any ruling or decision from Owner must be delivered to MGC ten (10) days from the date of notice to the Trade Contractor of the Owner's ruling or decision or the Trade Contractor shall have waived its Claim.

Trade Contractor shall have no cause of action against MGC for any claims for additional compensation or damages for Owner Related Claims unless and until Owner has paid such claim. Such payment is an absolute condition precedent to Trade Contractor filing a cause of action against MGC in regard to such claim.

**16.2    Other Claims**. Within five (5) days of the beginning of the event or non-occurrence of the event for which the Claim is to be made, Trade Contractor shall give MGC written notice of all Claims not covered in Article 16.1, including a request for time extension; otherwise, such Claims shall be deemed waived. This notice provision takes precedence over any other notice provision provided by or in the Trade Contract Documents.

**16.3    Complete Claim Package**. In addition to the requirements contained in the General Conditions Provisions, the complete Claim package, including but not limited to narrative, detailed schedule, detailed cost analysis, support documentation, contract articles Trade Contractor is relying upon, etc., shall be submitted to MGC no later than fifteen (15) calendar days after the completion of the work that is the subject of the claim; otherwise such Claims shall be deemed waived.

**16.4    Support Documentation**. When the MGC so determines, Trade Contractor shall provide all support documentation required by MGC for any claim, whether or not it relates to the Trade Contractor.  The above mentioned documentation shall be provided to MGC within five (5) days of the request.

**16.5    Fraudulent or False Claims Statutes or Ordinances**.  In submitting Claims or any request for payment, all Federal, State or County fraudulent or false claims statutes or ordinances apply.  In order for MGC to submit Trade Contractor's Claim to Owner, Trade Contractor must comply with all such statutes and ordinances.  These statutes generally require "certification" of Claims, which means that they are made under oath, in good faith and the pricing data is accurate and complete.  Filing a false or fraudulent claim has severe implications, including civil penalties and possible criminal action.  Therefore, prior to submission of Trade Contractor's Claims to MGC, Trade Contractor must prepare such Claim to fully comply with all applicable statutes and ordinances and this will be a condition precedent to submission to Owner.  Trade Contractor's failure to submit a compliant Claim will result in a waiver of the Claim.

**16.6    Compliance with General Conditions Provisions - Notice Provisions.**    NOT USED

**16.7    Waiver of Consequential Damages.**  Trade Contractor hereby waives all claims against MGC and MGC's sureties and the Owner for consequential damages arising out of or relating to this Trade Contract.

**16.8    Duty to Continue Prosecuting the Work.**  Trade Contractor acknowledges and agrees that it shall continue to diligently progress the Work and that it shall not be entitled to

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 27 of 52

suspend or cease work, notwithstanding the existence of any disputes between the parties including, but not limited to, denied claims, payment disputes, backcharges and recognized claims for which agreement cannot be reached.

## 17 CHANGES

**17.1** MGC may order changes in the scope of the Work as defined in Trade Contract Documents. No alteration, addition, omission or change shall be made in the Work except upon the execution of a written Change Authorization by MGC or a Written Directive from MGC. Trade Contractor shall not be entitled to, nor shall it receive, any adjustment to a Milestone or any increase or upward adjustment in the Trade Contract Price unless said time or amount, or both, are submitted to POJV in accordance with the Trade Contract Documents and are acknowledged by MGC in a written Change Authorization or Written Directive from MGC; otherwise Trade Contractor shall proceed at its own risk and expense, without recourse against MGC or the Owner.

**17.2** MGC will require Trade Contractor to furnish three (3) copies of each request for Change Authorization. Such requests shall be detailed in a well organized format acceptable to the MGC. All requests shall be submitted in accordance with the Trade Contract Documents and must include the following:

    a) numbering in accordance with MGC requirements;
    b) a cover letter clearly explaining the change events, summarizing the costs requested plus markups, the time requested, request expiration date, a consolidation of all qualifications included in the request and any required certifications;
    c) adequate detail to identify the differences in the quantities and costs for all additions, deletions or modifications for materials, labor, equipment and services
    d) Time Impacts with sufficient detail and support documentation;
    e) Breakdowns of quantities, costs, time, etc. by task, area and Project;
    f) Adequate change references for each item (e.g. drawings, specifications, Bulletins, RFIs, etc.);
    g) If reasonable, copies of pertinent drawing details, RFIs, directives, letters, bulletins, specifications, etc. shall be included such that the request can act as a stand alone document;
    h) All labor costs shall be estimated on a man-hour basis and labor burden costs shall be identified separately in the labor rates;
    i) All material costs shall be identified including material taxes and delivery costs.
    j) All equipment shall be estimated on an hourly, daily, weekly or monthly basis in accordance with the requirements of the General Conditions Provisions;
    k) Direct Costs and markups for the Trade Contractor and subcontractors, at all tiers, shall be separately identified;
    l) subcontractor, supplier and vendor proposals, at all tiers meeting the requirements established herein; and
    m) Any other information requested by the MGC to support the Trade Contractors request shall also be included.

In order to expedite the change request process, the Trade Contractor shall, within fourteen (14) days of the execution of the Trade Contract, provide a list of the labor rates and a breakdown of the labor burden for each classification of field labor expected to be utilized on the Work, including the

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 28 of 52

field labor for all subcontractors at all tiers. MGC will submit this to the Owner for review, and if approved, subsequent use by the Trade Contractor in future requests for Change Authorization.

**17.3** Any change or adjustment in the Trade Contract Price by virtue of a Change Authorization shall be specifically stated in the Change Authorization and shall be incorporated therein. There shall be no other monetary or time allowance, direct or indirect, to Trade Contractor other than what is specifically written in the Change Authorization including but not limited to delays, accelerations, suspensions, escalations, disruptions, inefficiencies, cumulative impact or other cost factors. If an agreement as to a monetary allowance or other term in the Change Authorization cannot be reached, MGC shall issue a Written Directive on terms the MGC in its sole discretion deems equitable, directing Trade Contractor to perform the work and reserving any final adjustment until completion of the Work. In the event of such Written Directive, Trade Contractor shall follow the same cost recording procedures as required in paragraph 17.7 below. Neither the submission, nor receipt, nor comment upon such cost records shall constitute an acceptance by MGC of any of the Trade Contractor's alleged costs or any liability by MGC therefore. Failure of Trade Contractor to accurately track and timely submit to MGC the cost records as herein specified and to submit a proper Claim shall be deemed a waiver of Trade Contractor's Claim.

**17.4** The failure of Trade Contractor to immediately commence performance of any Change Authorization or Written Directive by MGC shall constitute a material breach of the Trade Contract.

**17.5** The monetary amount for the performance of any Change Authorization or work performed pursuant to a Written Directive from MGC shall in no event exceed the amount set forth in Trade Contractor's prior price breakdown nor, in the case of an Owner Related Claim, the amount paid to MGC by the Owner for the change less MGC's reasonable markup for overhead and profit.

**17.6** Where unit prices are stipulated in the Trade Contract, all adjustments whether increases or decreases, shall be made in accordance with said units. Said units shall be deemed to include all Direct Costs, Indirect Costs, general and administrative expenses, field overhead, home office overhead, profit, supervision, extended performance cost factors and all other direct and indirect expenses.

**17.7** If MGC directs the changed work to be done by Trade Contractor on a time and material (force account) basis, Trade Contractor shall prepare daily time and material records for the reasonable resources required to perform the work. Such records shall: be submitted on the forms and in the format provided by the MGC; be kept individually for each individual written directive of for any other level of identification as directed by the MGC; and shall comply with the requirements set forth in the General Conditions Provisions.

**17.8** No Change Authorization or Written Directive shall vary, abrogate, void, or otherwise affect the terms, conditions and provisions of the Trade Contract except as specifically set forth in the Change Authorization.

## 18. TRADE CONTRACT INTERPRETATION

**18.1** **Inconsistencies and Omissions**. The Trade Contractor hereby acknowledges that it has carefully reviewed and examined the Trade Contract and all other documents directly or indirectly relating to the Trade Contract. Whenever possible, all the Trade Contract Documents shall be construed and interpreted in a consistent, harmonious and supplementary manner. In the event the Trade Contract Documents cannot be interpreted in a consistent, harmonious and

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 29 of 52

supplementary manner, the most stringent shall apply. However, in the event there are irreconcilable conflicts, ambiguities or discrepancies within the Trade Contract Documents, the precedence in resolving such conflicts, ambiguities, or discrepancies shall be as follows:

A.   Trade Contract shall govern over General Conditions Provisions, Division 0 Specifications (excluding the General Conditions Provisions), Division 1 Specifications, Technical Specifications and Plans.

B.   General Conditions Provisions shall govern over Division 0 Specifications, Division 1 Specifications, Technical Specifications and Plans.

C.   Division 0 Specifications (excluding the Trade Contract and the General Conditions Provisions) shall govern over Division 1 Specifications which shall govern over Technical Specifications and Plans.

D.   Technical Specifications shall govern over Plans and over Standard Specifications and over standards for testing and materials and over cited FAA Advisory Circulars.

E.   Plans shall govern over Standard Specifications and over standards for testing and materials and over cited FAA Advisory Circulars.

F.   On the Plans, calculated or figured dimensions shall govern over scaled dimensions.

Should design or other deficiencies appear in the Trade Contract Documents, it shall be the duty of Trade Contractor to so notify MGC in writing within five (5) working days of Trade Contractor's discovery thereof. Upon receipt of said notice, in the form of a Request for Information, MGC shall within a reasonable period of time instruct Trade Contractor as to the measures to be taken and the Trade Contractor shall comply with the MGC's instructions. Failure to provide timely notice may bar claims by Trade Contractor concerning design deficiencies in the Trade Contract Documents and the Trade Contractor may be liable for costs to make changes necessary to correct same. Any decision or adjustment by the Trade Contractor without a written determination by the MGC shall be at Trade Contractor's sole risk and expense. Any and all decisions by the MGC relative to any inconsistency or omission shall be binding on the Trade Contractor.

**18.2   Severability and Waiver**. The partial or complete invalidity of any one or more provisions of the Trade Contract Documents shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist in any one or more instances, upon the performance of any of the terms, covenants or conditions of the Trade Contract Documents or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

**18.3   Titles**. The titles given to the Articles of this Trade Contract are for ease of reference only and shall not be relied upon or cited for any other purpose.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 30 of 52

18.4 **Third Party Beneficiaries.** This Trade Contract is solely for the benefit of the signatories hereto. Except as expressly set forth in Article 19.8 of this Attachment B and Article 3.5 of Attachment D, this Trade Contract shall neither confer any third party rights, nor shall MGC incur any third party liability or responsibility by virtue of this Trade Contract or the documents incorporated herein by reference. However, the Owner is mutually recognized as a third party beneficiary to this Trade Contracts. Conversely, no Trade Contractor including its subcontractors, vendors and suppliers, at any tier, is a third party beneficiary to the agreement between the MGC and the Owner.

18.5 **Taxes, etc**. Trade Contractor shall be responsible for and shall pay any and all taxes, contributions, or fees imposed directly or indirectly on account of its work, labor, and material and services required under or relating to this Trade Contract. Without in any way affecting the equitable adjustment entitlement section in Article 6.9.01 of the General Conditions Provisions, at no time shall there be any increase in the Trade Contract Price(s) on account of any such taxes, contributions, or fees. Trade Contractor shall, on demand, substantiate that all taxes, contributions and fees are being properly paid.

18.6 **Oral Modifications**. The Trade Contract may not be changed, modified, altered or terminated orally. The Trade Contract supersedes all prior oral, verbal or written representations made by MGC.

18.7 Not Used

19 **DISPUTES**.

19.1 **Law and Effect.** This Trade Contract shall be governed by the laws of the State of Florida. Trade Contractor hereby submits to the jurisdiction of the State of Florida. The parties agree to accept service of process by mail at the respective addresses set forth in this Trade Contract. The parties acknowledge that this Trade Contract bears a reasonable relationship to the State of Florida and agree not to challenge such acknowledgment.

19.2 **Legal Forum – Venue.** Any disputes or claims arising out of or relating to the Trade Contract or a material breach of the same, shall be submitted (if Owner Related Claims, only after conclusion of the DRB process which must be timely pursued by Trade Contractor so as to avoid the expiring of the applicable statute of limitations) to the state courts in and for Miami-Dade County, Florida.

19.3 **Joinder.** Should MGC be involved in any lawsuit or alternative dispute resolution proceeding with Owner or any other third party which involves or relates in any way to Trade Contractor, the Work or Trade Contractor's performance of the same, Trade Contractor hereby acknowledges and agrees that it may be joined or shall participate to the extent requested by MGC in such proceeding. Trade Contractor further acknowledges and agrees that it will be bound by any decision, award or judgment relating to Trade Contractor, the Work or Trade Contractor's performance of the same to the same extent that MCG is bound to the Owner.

19.4 **Duty of Cooperation.** Regardless of whether or not Trade Contractor is joined in any proceeding referenced in Article 19.3 above or is allowed to participate in the DRB process, Trade Contractor shall provide MGC its full cooperation, support and assistance. Trade Contractor's duty to cooperate, support and assist MGC includes, but is not limited to the provision of witnesses/DRB presenters at times and locations determined to be reasonably necessary or

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 31 of 52

desirable, in MGC's sole discretion, the provision of access to all of Trade Contractor's records pertaining to the Work and the Program and the provision of any other information, data, records and documents determined to be reasonably necessary or desirable, in MGC's sole discretion.

**19.5** **Waiver of Jury Trial.** Trade Contractor hereby waives its right to a trial by jury in any and all disputes or claims arising out of or relating to this Trade Contract. Trade Contractor agrees to make this condition a part of each contract for materials, supplies, labor and equipment entered into by Trade Contractor in regard to the Work.

**19.6** **Damages.** Trade Contractor shall be responsible and liable for all costs disbursements, and expenses including reasonable attorneys' fees, DRB Board Member fees, and other related DRB costs, incurred by MGC as a result of (a) MGC's pursuing any extra, change, addition, claim or dispute against any other party on behalf of Trade Contractor; or (b) Trade Contractor's breach of any term or condition of this Trade Contract; or (c) MGC's having to defend or take part in any action or proceeding which directly or indirectly relates to acts or omissions of Trade Contractor or its subcontractors or suppliers, at any tier.

**19.7** **Attorneys' Fees.** In the event any dispute arises between MGC and Trade Contractor over any provision of the Trade Contract Documents, the work contracted for, the payment thereof, or otherwise, the prevailing party shall be entitled to recover all costs and expenses incurred in such litigation, including but not limited to court costs, attorneys' fees and expert witness fees, arising before, during, or after trial, including any costs, attorneys' fees or expenses incurred in any appeal therefrom.

**19.8** **Third Party Beneficiary.** Trade Contractor hereby expressly acknowledges and agrees that MGC's sureties are intended third party beneficiaries of Articles 19.2, 19.3, 19.4, 19.5, 19.6 and 19.7 above.

**20** **NOTICES.** All written notices as provided for herein shall be deemed served if deposited with the U.S. Postal Service, certified, return receipt requested or such private overnight mail service providing a receipt of delivery, addressed to MGC and Trade Contractor or hand delivered upon receipt as follows:

**Managing General Contractor:** Parsons-Odebrecht, J.V.

**US Mail Address**
PO Box 99-7030
Miami, FL 33299

**UPS and Fedex Address**
NW 22nd St & Perimeter Rd (Bldg 3025)
Miami, FL 33159

**c/o David Brown, Project Director**

**Trade Contractor:** **US Mail Address**
2100 Ponce De Leon Blvd., Suite 825
Coral Gables, Florida 33134

**c/o Donald L. Crissey, President**

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 32 of 52

**21** __ADVERTISING.__ The Trade Contractor, including all employees and agents, and its subcontractors and suppliers, at any tier, shall not take photographs of the work on site, or publish or display advertising matter of any description relating to the Work or the Program without first obtaining written consent from the MGC and the Owner.

**22** __SURVIVAL.__ All obligations of the Trade Contractor shall survive the termination of the Trade Contract.

**23** __ASSIGNMENT OF TRADE CONTRACT.__ The MGC reserves the right to assign this Trade Contract. This clause in no way restricts the rights of the Trade Contractor found elsewhere in this Trade Contract.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 33 of 52

# TRADE CONTRACT - ATTACHMENT C.1
## (for Trade Contractors Eligible for OCIP participation)

## INSURANCE REQUIREMENTS

## 1. INSURANCE

**1.1** Prior to commencement of the Work, Trade Contractor shall obtain and thereafter maintain and keep in force, the following types of insurance coverages subject to the minimum requirements specified below. All policies shall be issued by insurance companies acceptable to MDAD and Parsons-Odebrecht, J.V. Prior to performing any work, Trade Contractor shall furnish to MDAD and MGC (Parsons-Odebrecht, J.V.) three (3) copies of duly issued insurance certificate(s) to substantiate that all insurance coverages required to be provided by Trade Contractor are in force.

| Type of Insurance | Limits |
|---|---|
| **1.  Worker's Compensation**<br>**For exposures which do not occur on Miami International Airport Property** | Full Statutory Limits as required by Chapter 440, Florida Statutes |
|  |  |
| **2.  Employer's Liability**<br>**For exposures which do not occur on Miami International Airport Property** |  |
| Bodily Injury by Accident, each accident | $1,000,000 |
| Bodily Injury by Disease, each employee | $1,000,000 |
| Bodily injury by Disease, policy limit | $1,000,000 |
|  |  |
| **3.  Commercial General Liability**<br>**For exposures which do not occur on Miami International Airport Property**<br>(including contractual liability and coverage's for completed operations) | $1,000,000 General Aggregate Coverage shall be occurrence form and apply to bodily injury and property damage for operations (including explosion, collapse and underground coverage), independent contractors, products and completed operations. Limits can be provided by a combination primary Commercial General Liability and Excess or Umbrella Liability policy. Limits are subject to change as dictated by MDAD. |
| Products/Completed Operations Aggregate | $1,000,000 |
| Personal/Advertising Injury Aggregate | $1,000,000 |
| Each Occurrence limit | $1,000,000 |
|  |  |
| **4.  Commercial Automobile Liability**<br>(includes all owned, non-owned and hired vehicles trucks and trailers used in |  |

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 34 of 52

| connection with the work) | |
|---|---|
| Bodily Injury and Property Damage Combined Single Limit Liability | $1,000,000 Coverage to apply for both on-site and off-site operations. Limits subject to change by MDAD. |
| | |
| **5. Watercraft and Aircraft Liability** Should watercraft or aircraft of any kind be used by Trade Contractors or its subcontractors of any tier, or by anyone else on its behalf, Trade Contractor or subcontractors of any tier shall maintain or cause the operator of the watercraft or aircraft to maintain liability insurance. | Limits to be indicated by MDAD. Coverage is to be primary and non-contributory The Owner and others shall be listed as an Additional Insureds |
| | |
| **6. Professional Liability** | $1,000,000 per claim |
| Professional Service firms must provide Professional Liability Insurance. Architects and Engineers must provide insurance covering liability arising out of design errors and omissions. | Limits are subject to change as indicated by MDAD. |
| | |
| **7. Pollution Liability** | Limits to be indicated by MDAD |
| Trade Contractors and subcontractors at all tiers involved in operations involving hazardous materials, hazard remediation or demolition shall provide and maintain Contractors' pollution Liability. | |

**1.2** All of the above referenced insurance coverage's, except for Worker's Compensation and Employer's Liability shall name the following as additional insured:

Parsons-Odebrecht, J.V. and MDAD, and their officials, employees and agents and any wholly owned subsidiaries or parent organizations or any other entity required by the Prime Contract.

Worker's Compensation Insurance and Employer's Liability Insurance shall contain a waiver of subrogation.

**1.3** All insurance policies required to be carried by the Trade Contractor shall **(A)** be without right of contribution from MDAD and MGC and MDAD and MGC will not be obligated to make any premium or loss payment whatsoever; **(B)** not be excess, but shall provide, in the case of each prescribed coverage, that the policy of insurance shall be deemed primary and that MGC insurance, if any, shall be excess over and above the insurance provided by the Trade Contractor under this attachment.

**1.4** The Trade Contractor shall furnish certificates of insurance and insurance policies to the MGC prior to commencing any operations under this Trade Contract. Certificates and policies shall

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 35 of 52

clearly indicate that the Trade Contractor and its subcontractors and/or suppliers, at any tier, providing labor and or materials for the Program have obtained insurance, in the type, amount, and classifications, as required for strict compliance with this Article. The certificates and policies must provide that, in the event of any material change in or cancellation of the policies reflecting the required coverages, thirty (30) days advance notice shall be given to the MGC and the Risk Management Division of the Owner.

**1.5** Right to Examine: MGC and the Owner reserve the right, upon reasonable notice, to examine the original or true copies of the policies of insurance (including but not limited to binders, amendments, exclusions, riders and applications) to determine the true extent of coverage. The Trade Contractor agrees to such inspection at the offices of MGC and/or the County.

**1.6** Compliance with the foregoing requirements as to the carrying of insurance shall not relieve the Trade Contractor from liability under any other portion of the Trade Contract Documents.

**1.7** Cancellation of any insurance or bonds, or non-payment by the Trade Contractor of any premium for any insurance policies or bonds required by this Trade Contract shall constitute a breach of this Trade Contract. In addition to any other legal remedies, the MGC at its sole option may terminate this Trade Contract or pay such premiums, and deduct the costs thereof from any amounts which are or may be due to the Trade Contractor.

**1.8** Trade Contractor shall exclude from their Trade Contract Price, premium costs for those insurances maintained by the County as specified in the Miami Dade Aviation Department Owner Controlled Insurance Program Manual and in Article 12.3.07 of the General Conditions Provisions.

**1.9** Detailed information including original policy(ies) relating to the terms and conditions of the insurance being provided by MDAD will be available to anyone making inquiry through the MDAD Risk Management Division at Fax No. 305-876-7162.

**1.10** Miami-Dade County, Florida shall have the right, at its sole option, to procure insurance, substituting in whole or in part, for that referred to in Article 12.3.07 of the General Conditions Provisions, or to require that the Trade Contractor and/or subcontractors of all tiers to obtain insurance, substituting in whole or in part for that above referred to, provided always, however, that the Trade Contractor and subcontractors and/or suppliers, at all tiers, shall be afforded coverage equivalent to that above referred to and that the Owner shall either pay the premium on such substitute insurance obtained by it or reimburse the Trade Contractor and subcontractor for the premium paid on substitute insurance obtained by them. With regard to such substitute insurance, the Trade Contractor shall furnish to the Owner and MGC, a copy of applicable policies, so as to confirm reimbursable rates and premiums.

**1.11** Immediate notification must be given the Owner and MGC and its agent in case of accident or occurrence which might give rise to a claim under any policy provided by the Owner and/or MGC, or any policy on which the Owner and/or MGC is a joint insured.

**1.12** The Trade Contractor and its subcontractors and suppliers, at all tiers, shall cooperate to the fullest extent with the Owner and MGC in all matters relating to the insurance provided and shall comply with all requirements of any insurance policy procured by the Owner and/or MGC. They shall also at their own expense furnish the Owner and MGC or its duly authorized representative with copies of all correspondence, papers, records and other items necessary or convenient for dealing with or defending against any claims and for administering the

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B
Page 36 of 52

November 6, 2007
Section 00031
Version 5

aforementioned insurance including furnishing the time of any of their employees, officers, or agents whose presence or testimony is necessary or convenient in any negotiations or proceedings involving such insurance.

**1.13** The terms of these insurance provisions are not intended to create any rights for the Trade Contractor and/or its subcontractors and suppliers, at any tier, other than rights which may be available to them under the policies themselves, whatever such rights might be. Moreover, the MGC makes no representation or guaranty either by these insurance provisions or otherwise as to the effect of or the coverage under said policies, and no employee or agent of the MGC is authorized to make any such representation or guaranty, or to offer any interpretation of or information on said policies. Upon request of the Trade Contractor and/or its subcontractors and suppliers, coverage forms will be made available for examination.

**1.14** Trade Contractor's materials and equipment that will become an integral part of the completed Work, either on the site or in the building, and completed portions of the Trade Contractor's Work, shall be covered by a Builders' Risk insurance policy containing certain deductibles and exclusions. MGC shall not be responsible for loss of or damage to materials, tools, equipment, appliances or other personal property owned, rented or used by the Trade Contractor or anyone employed by it in the performance of the Trade Contractor's Work, however caused. A copy of said Policy or a certificate will be available for Trade Contractor's inspection at MGC's project office. It is Trade Contractor's responsibility to evaluate the protection afforded by that Policy and to carry its own insurance against all losses not covered by said Policy, such as Trade Contractor's machinery, tools, equipment, appliances or other personal property owned, rented or used by the Trade Contractor or anyone employed by it in the performance of the Trade Contractor's Work.

**1.15** Waivers Required: Contractors' General Liability, Automobile, Umbrella or Excess Liability and Property Insurers shall provide Waivers of Subrogation in favor of MDAD, MGC and other designated parties. General and Excess Liability Policies shall name MDAD, its officials, employee and agents and any wholly owned subsidiaries or parent organizations as additional insureds and shall state coverage is primary and non-contributory.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 37 of 52

# TRADE CONTRACT - ATTACHMENT C.2
## (for Trade Contractors Ineligible for OCIP participation)

## INSURANCE REQUIREMENTS

**INSURANCE**

**1.1** Prior to commencement of the Work, Trade Contractor shall obtain and thereafter maintain and keep in force, the following types of insurance coverages subject to the minimum requirements specified below. All policies shall be issued by insurance companies acceptable to MDAD and Parsons-Odebrecht, J.V. Prior to performing any work, Trade Contractor shall furnish to MDAD and Parsons-Odebrecht, J.V. **(MGC)** three (3) copies of duly issued insurance certificate(s) to substantiate that all insurance coverages required to be provided by Trade Contractor are in force.

| Type of Insurance | Limits |
|---|---|
| **1. Worker's Compensation** | Full Statutory Limits as required by Chapter 440, Florida Statues |
| | |
| **2. Employer's Liability** | |
| Bodily Injury by Accident, each Accident | $1,000,000 |
| Bodily Injury by Disease, each employee | $1,000,000 |
| Bodily injury by Disease, policy limit | $1,000,000 |
| | |
| **3. Comprehensive General Liability**<br><br>a. **For exposures which occur on-site and off-site**<br>MDAD and other parties must be added as additional insureds | $1,000,000 General Aggregate Coverage shall be occurrence form and apply to bodily injury and property damage for operations (including explosion, collapse and underground coverage), independent contractors, products and completed operations. Limits can be provided by a combination primary Commercial General Liability and Excess or Umbrella Liability policy. Limits are subject to change as dictated by MDAD. |
| Products/Completed Operations Aggregate | $1,000,000 |
| Personal/Advertising Injury Aggregate | $1,000,000 |
| Each Occurrence limit | $1,000,000 |
| Fire Damage Legal Liability (Any One Fire) | $500,000 |
| Medical Expense Limit (any one person) | $10,000 |

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 38 of 52

| | |
|---|---|
| **4. Commercial Automobile Liability** | |
| (includes all owned, non-owned and hired vehicles trucks and trailers used in connection with the work) | |
| Bodily Injury and Property Damage Combined Single Limit Liability | $1,000,000 Coverage to apply for both on-site and off-site operations. Limits subject to change by MDAD. |
| | |
| **5. Watercraft and Aircraft Liability** Should watercraft or aircraft of any kind be used by Trade Contractors or its subcontractors of any tier, or by anyone else on its behalf Trade Contractor or subcontractors of any tier shall maintain or cause the operator of the watercraft or aircraft to maintain liability insurance. | Limits to be indicated by MDAD. Coverage is to be primary and non-contributory The Owner shall be listed as an Additional Insured |
| | |
| **6. Professional Liability** | $1,000,000 per claim |
| Professional Service firms must provide Professional Liability Insurance. Architects and Engineers must provide insurance covering liability arising out of design errors and omissions. | Limits are subject to change as indicated by MDAD. |
| | |
| **7. Pollution Liability** | Limits to be indicated by MDAD |
| Trade Contractors and subcontractors of all tiers involved in operations involving hazardous materials, hazard remediation or demolition shall provide and maintain Contractors' pollution Liability. | |

**1.2** All of the above referenced insurance coverage's, except for Workers Compensation and Employer's Liability shall name the following as additional insured:

Parsons-Odebrecht, J.V. and MDAD, and their officials, employees and agents and any wholly owned subsidiaries or parent organizations or any other entity required by the Prime Contract.

Worker's Compensation Insurance and Employer's Liability Insurance shall contain a waiver of subrogation.

**1.3** All insurance policies required to be carried by the Trade Contractor shall **(A)** be without right of contribution from MDAD and MGC and MDAD and MGC will not be obligated to make any premium or loss payment whatsoever; **(B)** not be excess, but shall provide, in the case of each prescribed coverage, that the policy of insurance shall be deemed primary and that MGC insurance,

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 39 of 52

if any, shall be excess over and above the insurance provided by the Trade Contractor under this attachment.

**1.4** The Trade Contractor shall furnish certificates of insurance and insurance policies to the MGC prior to commencing any operations under this Trade Contract. Certificates and policies shall clearly indicate that the Trade Contractor and its subcontractors and/or suppliers, at any tier, providing labor and or materials for the Program have obtained insurance, in the type, amount, and classifications, as required for strict compliance with this Article. The certificates and policies must provide that, in the event of any material change in or cancellation of the policies reflecting the required coverages, thirty (30) days advance notice shall be given to the MGC and the Risk Management Division of the Owner.

**1.5** Right to Examine: MGC and the Owner reserve the right, upon reasonable notice, to examine the original or true copies of the policies of insurance (including but not limited to binders, amendments, exclusions, riders and applications) to determine the true extent of coverage. The Trade Contractor agrees to such inspection at the offices of MGC and/or the County.

**1.6** Compliance with the foregoing requirements as to the carrying of insurance shall not relieve the Trade Contractor from liability under any other portion of the Trade Contract Documents.

**1.7** Cancellation of any insurance or bonds, or non-payment by the Trade Contractor of any premium for any insurance policies or bonds required by this Trade Contract shall constitute a breach of this Trade Contract. In addition to any other legal remedies, the MGC at its sole option may terminate this Trade Contract or pay such premiums, and deduct the costs thereof from any amounts which are or may be due to the Trade Contractor.

**1.8** Trade Contractor shall exclude from their Trade Contract Price, premium costs for those insurances maintained by the County as specified in the Miami Dade Aviation Department Owner Controlled Insurance Program Manual and in Article 12.3.07 of the General Conditions Provisions.

**1.9** Detailed information including original policy(ies) relating to the terms and conditions of the insurance being provided by MDAD will be available to anyone making inquiry through the MDAD Risk Management Division at Fax No. 305-876-7162.

**1.10** Miami-Dade County, Florida shall have the right, at its sole option, to procure insurance, substituting in whole or in part, for that referred to in Article 12.3.07 of the General Conditions Provisions, or to require that the Trade Contractor and/or subcontractors of all tiers to obtain insurance, substituting in whole or in part for that above referred to, provided always, however, that the Trade Contractor and subcontractors and/or suppliers, at all tiers, shall be afforded coverage equivalent to that above referred to and that the Owner shall either pay the premium on such substitute insurance obtained by it or reimburse the Trade Contractor and subcontractor for the premium paid on substitute insurance obtained by them. With regard to such substitute insurance, the Trade Contractor shall furnish to the Owner and MGC, a copy of applicable policies, so as to confirm reimbursable rates and premiums.

**1.11** Immediate notification must be given the Owner and MGC and its agent in case of accident or occurrence which might give rise to a claim under any policy provided by the Owner and/or MGC, or any policy on which the Owner and/or MGC is a joint insured.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 40 of 52

**1.12** The Trade Contractor and its subcontractors and suppliers, at all tiers, shall cooperate to the fullest extent with the Owner and MGC in all matters relating to the insurance provided and shall comply with all requirements of any insurance policy procured by the Owner and/or MGC. They shall also at their own expense furnish the Owner and MGC or its duly authorized representative with copies of all correspondence, papers, records and other items necessary or convenient for dealing with or defending against any claims and for administering the aforementioned insurance including furnishing the time of any of their employees, officers, or agents whose presence or testimony is necessary or convenient in any negotiations or proceedings involving such insurance.

**1.13** The terms of these insurance provisions are not intended to create any rights for the Trade Contractor and/or its subcontractors and suppliers, at any tier, other than rights which may be available to them under the policies themselves, whatever such rights might be. Moreover, the MGC makes no representation or guaranty either by these insurance provisions or otherwise as to the effect of or the coverage under said policies, and no employee or agent of the MGC is authorized to make any such representation or guaranty, or to offer any interpretation of or information on said policies. Upon request of the Trade Contractor and/or its subcontractors and suppliers, coverage forms will be made available for examination.

**1.14** Trade Contractor's materials and equipment that will become an integral part of the completed Work, either on the site or in the building, and completed portions of the Trade Contractor's Work, shall be covered by a Builders' Risk insurance policy containing certain deductibles and exclusions. MGC shall not be responsible for loss of or damage to materials, tools, equipment, appliances or other personal property owned, rented or used by the Trade Contractor or anyone employed by it in the performance of the Trade Contractor's Work, however caused. A copy of said Policy or a certificate will be available for Trade Contractor's inspection at MGC's project office. It is Trade Contractor's responsibility to evaluate the protection afforded by that Policy and to carry its own insurance against all losses not covered by said Policy, such as Trade Contractor's machinery, tools, equipment, appliances or other personal property owned, rented or used by the Trade Contractor or anyone employed by it in the performance of the Trade Contractor's Work.

**1.15** Waivers Required: Contractors' General Liability, Automobile, Umbrella or Excess Liability and Property Insurers shall provide Waivers of Subrogation in favor of MDAD, MGC and other designated parties. General and Excess Liability Policies shall name MDAD, its officials, employee and agents and any wholly owned subsidiaries or parent organizations as additional insureds and shall state coverage is primary and non-contributory.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 41 of 52

# TRADE CONTRACT - ATTACHMENT D

# PAYMENT PROVISIONS

## 1    GENERAL PROVISIONS

**1.1    Schedule of Values**.  Trade Contractor shall provide MGC with a Schedule of Values satisfactory to MGC no more than seven (7) days from the date of execution of the Trade Contract.  The format of the Schedule of Values shall be as provided for in the Trade Contract Documents, or in the absence thereof, as directed by MGC.  The Schedule of Values must be justified by Trade Contractor and appropriately reflect amounts that may become due for the portion of the Work performed by Trade Contractor.

**1.2    Payment Use Restriction**.  No payment received by Trade Contractor shall be used to satisfy or secure any indebtedness other than one owed by Trade Contractor to a person or entity furnishing labor, materials, equipment or services to the Work.  Trade Contractor agrees that all actual funds received by Trade Contractor are to be held in trust, and Trade Contractor further agrees to be bound as a fiduciary to MGC and to Trade Contractor's subcontractors and suppliers, at any tier, to apply the funds in trust properly to payment of labor, equipment, services and materials for the Work.

**1.3    Payment Use Verification**.  MGC shall have the right at all times to contact Trade Contractor's subcontractors and suppliers, at any tier, to ensure same are being paid by Trade Contractor for labor, materials, equipment and services furnished for use in performing the Work.

**1.4    Claim Waivers, Waivers of Bond Claims and Affidavits**.  As a condition precedent for each progress and final payment application, Trade Contractor shall submit all documents and forms including but not limited to submittal of lien waivers attached herein, waivers of bond claims, and affidavits from Trade Contractor and its subcontractors, suppliers and materialmen, at any tier, for the completed Work stating the amounts received to date from MGC and the amount of the draw requested.  The inclusion of this provision constitutes MGC's written demand for such sworn statement to be furnished as a condition to making any payment to Trade Contractor.

**1.5    Trade Contractor Payment Failure**.  In the event MGC has reason to believe that labor, material, equipment, services or other obligations incurred in the performance of the Work are not being paid, MGC shall give written notice of such claim to Trade Contractor and may take any steps deemed necessary to ensure that any future progress payment shall be utilized to pay such obligations.  If, upon receipt of said notice, Trade Contractor does not within three (3) days:

> (a)    supply evidence to the satisfaction of MGC that the amounts owed the claimant have been paid; or

> (b)    post a bond in the amount specified by MGC, indemnifying Owner, MGC and MGC's sureties, if any, from such actual, potential or threatened claims or liens;

MGC shall have the right to withhold payments due or to become due to Trade Contractor in an amount necessary, in the MGC's sole opinion, to protect MGC from any and all loss, damage or

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 42 of 52

expense, plus attorneys' fees, arising out of or relating to any such claim until the claim has been satisfied by Trade Contractor.

**1.6    Payment Not Acceptance**.  Payment to Trade Contractor is specifically agreed not to constitute or imply acceptance by MGC or Owner of any portion of the Work, nor shall occupancy or use of the Work by the Owner or MGC constitute acceptance of the Work hereunder or any part thereof, nor a waiver of any claims MGC may have pursuant to the Trade Contract Documents.

**1.7    Payment Bond Claims**    Any and all of claims of payment from Trade Contractors which are covered by the Florida Statute 255.05 Payment Bond (a "Payment Claim") shall clearly indicate the amount sought and if the amount of the claim is not known, the claim from the Trade Contractor shall clearly state the Trade Contractor's estimated maximum potential claim.

**1.8    Disputed Payment Claims**    Trade Contractor shall endeavor to resolve with MGC any and all legitimate Payment Claims ("Disputed Payment Claims") and shall endeavor to resolve any and all legitimate Disputed Payment Claims with its subcontractors and material suppliers on a prompt basis, and attempt to reach resolution within sixty days following the making of any such claim in accordance with the terms of the Trade Contract Agreement.  The Trade Contractor shall be amenable to attempt to resolve such Claims by means of mediation or other alternate dispute resolution processes as may be mutually agreeable to actively attempt to reach resolution promptly.

## 2    PROGRESS PAYMENTS

**2.1    Application**.  Trade Contractor's progress payment application for Work performed in the preceding period shall be submitted to MGC in a form satisfactory to the MGC in accordance with the terms of the Trade Contract Documents, for the approval of MGC and Owner.  MGC shall include the approved progress payment application in its next scheduled payment request to the Owner.  Submittal of Certified Payroll, Affidavit as required by Section 10-35 of the Code of Miami-Dade County and DBE Reports in accordance with Trade Contract Documents is a condition precedent to approval of the Progress Payment Application.

**2.2    Retainage**.  Subject to Article 3.4 of Attachment D of the Trade Contract,  MGC will withhold no more retainage from Trade Contractor than is being withheld by the Owner from MGC's payment with respect to Trade Contractor's work.  Trade Contractor and MGC agree that the retainage shall be 10% of the value of work performed.  The release of MGC's retainage by the Owner is an absolute condition precedent to release of Trade Contractor's retainage by MGC, provided that all other conditions for payment as provided in the Trade Contract Documents are met.  MGC expressly reserves the right to withhold all or part of Trade Contractor's retainage until such time as Trade Contractor's Work is complete and accepted by Owner.

**2.3    Time of Application**.  Unless Trade Contractor submits its requisition in a form satisfactory to MGC by the 20th of each month, no progress payment may be requisitioned for that payment period.  All progress payment requisitions are subject to audit and if any doubt as to its validity exists, the right to progress payments may be suspended or denied, fully or partially.  The estimate by the MGC or the Owner or its representative of the value of Work performed during a payment period or any deduction, offset or counterclaim against the requisitioned amount shall be binding on Trade Contractor. The aforementioned payment request shall cover work performed during the previous period and, to the extent allowed, stored material as considered elsewhere herein.

### 2.4 Stored Materials and Equipment

**2.4.1** Materials shall be stored so as to assure the preservation of their quality and fitness for the work. Stored materials shall be located so as to facilitate their inspection. Unless otherwise permitted by MGC in writing, materials shall be stored on Owner property or in an accepted bonded warehouse(s); materials stored within the airport limits shall not create an obstruction to air navigation, nor shall they interfere with the free and unobstructed movement of aircraft, vehicles, or airport operations.

**2.4.2** Unless otherwise provided in the Trade Contract Documents and only if approved in advance by Owner, partial payment applications may include amounts for materials or equipment suitably stored on the construction site or at a specific location designated by MGC. Partial payment applications requesting payment for stored materials or equipment suitably stored shall include bills of sale, certificates of insurance, or such other documents required by Owner or MGC to establish Owner's or MGC's title to such materials and equipment and to otherwise protect Owner's and MGC's interests therein.

**2.4.3** Trade Contractor expressly represents and warrants that title to all stored materials or equipment included in a pay application is transferred to MGC and/or Owner on the date that Trade Contractor submits the pay application to MGC. By submitting its pay application for stored materials or equipment to MGC, Trade Contractor expressly represents and warrants that no person or entity can claim a security interest in the stored materials and equipment covered by the pay application.

**2.4.4** Notwithstanding any payment to Trade Contractor, Trade Contractor retains the risk of loss for stored materials and equipment at all times. Trade Contractor acknowledges and agrees that MGC and/or Owner obtain and shall be deemed to obtain exclusive possession of all stored materials or equipment included within a pay application when the stored materials or equipment are delivered to the site or the agreed upon storage location. MGC and/or Owner obtain exclusive possession notwithstanding the fact that risk of loss for the stored materials and equipment remains with Trade Contractor, and without regard to the identity of the entity that maintains or controls any location(s) where materials and equipment are stored. When used in the Trade Contract Documents or in documents furnished to satisfy Trade Contract obligations, the terms "F.O.B." and "C.I.F." are used as delivery terms only and shall have no effect on the MGC's and/or Owner's exclusive possession or the Trade Contractor's retention of risk of loss.

### 2.5 Amount and Time of Payment.

**2.5** **Amount and Time of Payment**. Progress payments to Trade Contractor for any payment period shall not exceed the value of the Work requisitioned by Trade Contractor less retention. Progress payments shall be made no later than five (5) business days after receipt by MGC of payment from Owner for such Work. Payment by Owner to MGC for the Trade Contractor's work shall be an absolute condition precedent to payment from MGC to Trade Contractor. No monies shall be due Trade Contractor unless and until five (5) business days have

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 44 of 52

passed from receipt by MGC of such payment from Owner. Payment shall be made only after Trade Contractor's submittal of all necessary documentation, including but not limited to Lien Waivers, Waivers of Bond Claims, Affidavits, and all other conditions for payment as provided in the Trade Contract Documents are met. As a further condition for each payment, including final payment, whenever required in the Trade Contract Documents or requested by the MGC, Trade Contractor shall obtain a written certification from all manufacturers, equipment or material suppliers or fabricators that the Trade Contractor's work is in conformance with installation specifications and requirements, and that when Trade Contractor's work is complete, they will issue a warranty in favor of MGC and Owner for their equipment or materials incorporated into the Work.

**2.6    Unit Price Work**. Where this Trade Contract anticipates that the Work covered shall be paid for at an agreed rate per unit of work in place, then Trade Contractor agrees that the quantities of completed work paid for at the unit prices listed herein shall represent full payment for the work covered and that the MGC shall determine the quantity of work to be paid. If there is a disagreement between the MGC and the Trade Contractor on the final quantity to be paid, the Owner's determination shall be final. This provision shall not be construed to bar the Trade Contractor from filing a claim pursuant to the Trade Contract Documents.

# 3    Final Payment

**3.1    Application**. The following are absolute conditions precedent to final payment to Trade Contractor: (1) final completion and acceptance of the Work by Owner and MGC; (2) receipt of the final payment by MGC from Owner, including any retainage; and (3) Trade Contractor furnishing evidence of fulfillment of Trade Contractor's obligations in accordance with the Trade Contract Documents. Thereafter, MGC shall forward Trade Contractor's application to Owner for final payment without delay. Trade Contractor shall be paid within 30 days of the MGC's receipt of final payment for the Work.

**3.2    Requirements.** Before MGC shall be required to forward Trade Contractor's application for final payment to Owner, Trade Contractor shall submit to MGC the following:

(a)    an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which Owner, its property, MGC or its sureties might in any way be liable, have been paid or otherwise satisfied. Before any payment is made to Trade Contractor, Trade Contractor shall submit satisfactory proof that the Work and the Project are free and clear from all liens and claims arising from the performance of the Trade Contract.

(b)    consent of surety to final payment, if required;

(c)    satisfaction of required close-out procedures set forth in the Trade Contract Documents;

(d)    delivery of a fully executed written warranty from Trade Contractor and from all manufacturers, equipment or material suppliers and fabricators, at all tiers, as required by the Trade Contract Documents; and

(e)    other data, if required by MGC or Owner or the Trade Contract Documents, including, but not limited to, final detailed "as-built" drawings in a form satisfactory to MGC and Owner, record drawings or data, field payroll

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 45 of 52

records, DBE compliance reports, Community Workforce Program reports, warranties, guarantees, receipts, releases, and waivers of liens to the extent and in such form as may be designated by MGC or Owner.

**3.3** **Final Payment to Trade Contractor**. Final payment from Owner to MGC shall be an absolute condition precedent to final payment to Trade Contractor. Trade Contractor waives all rights of action until MGC receives final payment.

Trade Contractor's acceptance of the final payment shall constitute a waiver of all claims by Trade Contractor relating to the Work, but shall in no event relieve Trade Contractor of liability for the obligations to MGC as provided in the Trade Contact Documents or by law.

**3.4** **Withholding Payments**. Each progress payment including the final payment is subject to MGC's withholding an amount interest free reasonably necessary to fully protect and insure itself against any actual or potential liability or damage directly or indirectly relating to the Trade Contract Documents, or Trade Contractor's breach or threatened breach of any other contract between the Trade Contractor and the MGC, including either of its partners. MGC may require Trade Contractor to furnish an affidavit detailing each and every unpaid obligation directly or indirectly relating to that payment under the Trade Contract Documents. The affidavit shall include (a) the name of each party, (b) the amount due or to become due, (c) the due dates thereof, and (d) the nature of any offset relating thereto, along with consent of its surety that payment be made. In addition, MGC may withhold Trade Contractor's payment totally or partially for the same reasons established in the Prime Contract that the Owner may withhold MGC's payment. MGC shall have the right to issue payment checks to Trade Contractor and its subcontractors or suppliers, at any tier, as joint payees if MGC considers it necessary to ensure proper performance of the Work and compliance with requirements of the Trade Contract Documents.

**3.5** MGC and Trade Contractor hereby expressly acknowledge and agree that the MGC's sureties are intended third party beneficiaries of the condition precedent clauses in Articles 2.5, 3.1, 3.2 and 3.3 above, with regard to both progress and final payments. In the event that a claim is asserted by Trade Contractor against MGC's sureties by way of arbitration, mediation, federal or state court action, or through any other forum for resolution of disputes, Trade Contractor hereby expressly acknowledges and agrees that MGC's sureties may affirmatively assert the condition precedent payment clauses in Articles 2.5, 3.1, 3.2 and 3.3 above. These clauses shall be a complete defense to non-payment by MGC and its sureties pending the occurrence of payment from Owner to MGC.

POJV -- North Terminal Development Consolidation Program
Trade Contract SC-00068 -- Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 46 of 52

# PARTIAL WAIVER AND RELEASE OF LIEN AND BOND RIGHTS
## (FOR TRADE CONTRACTORS, SUBCONTRACTORS AND SUPPLIERS, AT ALL TIERS)

The undersigned (the "Lienor"), for and in consideration of value received, hereby waives and releases any and all liens, claims of lien, bond rights, suits, accounts, debts, demands, claims, torts, charges, and causes of actions against **Parsons-Odebrecht, J.V.** (the "Managing General Contractor"), Miami-Dade Aviation Department (the "Owner"), any sureties of Managing General Contractor and their officers, directors, employees, agents, servants, parent and subsidiary companies arising out of labor, services, work, materials or equipment performed, furnished or utilized in connection with the North Terminal Development Consolidation Program (the "Program") through the _____ day of _____, 20__, except as follows:

_____

_____

_____

The undersigned warrants and represents that all labor, services, work, materials and equipment performed, furnished or utilized in connection with the Program through the date identified above have been paid for in full, including any and all applicable duties and taxes, including sales, use and payroll taxes, if any, applicable to the labor, services, work, materials and equipment performed, furnished or utilized by or for the undersigned, except as follows:

_____

_____

_____

The undersigned further represents and warrants that title to all materials and equipment furnished or utilized in connection with the Program through the date identified above has been transferred to the Managing General Contractor and/or the Owner of the Program, that Managing General Contractor and/or the Owner of the Program has good title to such materials and equipment, and that there are no liens, encumbrances or security interests against such materials or equipment.

IN WITNESS WHEREOF, I hereunto set my hand and seal on this _____ day of _____.

Firm: _____

By: _____

Title: _____

STATE OF   (                              )
COUNTY OF (                              )

The foregoing Partial Waiver and Release of Lien and Bond Rights was acknowledged before me this _____ day of _____, 20___ by _____, as _____, who is personally known to me or has produced _____ as identification.

_____
Notary Public, State of Florida

My commission expires:

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B
Page 47 of 52

November 6, 2007
Section 00031
Version 5

## FINAL WAIVER AND RELEASE
### (FOR TRADE CONTRACTORS, SUBCONTRACTORS AND SUPPLIERS, AT ALL TIERS)

The undersigned, in consideration of the sum of $_____, does hereby release and waive any and all liens, claims of lien, bond rights, suits, accounts, debts, demands, claims, torts, charges, and causes of actions against Parsons-Odebrecht, J.V. ("Managing General Contractor"), the Miami-Dade Aviation Department ("Owner"), and their respective sureties, officers, directors, employees, agents, servants, parent and subsidiary companies, and attorneys arising out of labor, services, work, materials or equipment performed, furnished or utilized on the North Terminal Development Consolidation Program ("Program") by, for or on behalf of the undersigned or otherwise in connection with or arising out of the Program, except as specifically set forth below:

_____

_____

_____

The undersigned hereby warrants and represents that all labor, services, work, materials and equipment performed, furnished or utilized in connection with the Program have been paid for in full including all applicable duties and taxes, including sales, use and payroll taxes, if any, applicable to the labor, services, work, materials and equipment performed, furnished or utilized by or for the undersigned.

The undersigned further represents and warrants that title to all materials and equipment furnished or utilized in connection with the Program has been transferred to Managing General Contractor and/or the Owner of the Program, that Managing General Contractor and/or the Owner of the Program has good title to such materials and equipment, and that there are no liens, encumbrances or security interests against such materials or equipment.

This final release shall not become effective until the check issued has been honored in the collection process.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _____ day of _____, 200__.

Firm: _____

By:_____

Title: _____

STATE OF _____
COUNTY OF _____

Before me this day came _____ who is either known by me or produced _____ as identification and acknowledged that he/she executed this release and acknowledged that he/she fully understood its contents and freely executed the same for the sole consideration therein expressed.

Subscribed and sworn to before me this _____ day of _____, 200__.

My Commission expires:          Notary Public:_____

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 48 of 52

# TRADE CONTRACT - ATTACHMENT E

## TRADE CONTRACTMILESTONES

Completion of the Work within the Milestones is of the essence.

The Milestones for this Work are set forth below.The Trade Contractor shall furnish for review and approval a detailed, resource loaded, critical path schedule showing the Trade Contractor's plan for construction. The Schedule shall conform to Specification Section 1310.

| Milestone Description | Milestone Date | Owner's Liquidated Damages per Calendar Day | Owner's Liquidated Damages Cap | Liquidated Indirect Costs per Calendar Day |
|---|---|---|---|---|
| Substantial Completion of Project 747B | May 22, 2010 | $5,000 | $1,000,000 | $2,650 |

Note 1: The Milestones which do not have Liquidated Indirect Costs are considered Interim milestones.

Note 2: The maximum aggregate daily amount of Owner Liquidated Damages which may be assessed, regardless of the number of Liquidated Damage Milestones, shall be largest daily amount listed above. However, it is expressly agreed that if independent and unrelated events cause a Delay to more than one Liquidated Damage Milestone with respect to different Projects, the maximum aggregate daily amount that may be assessed as a result of the delays to the Milestones shall be the Liquidated Damages specified for the Milestone for each of the delayed Projects. If an event(s) causes a Delay to a Milestone which in turn causes a Delay to a subsequent Milestone(s), only the Liquidated Damages set forth in the initially delayed Milestone shall apply.

Note 3: Stacking (pyramiding) of Liquidated Indirect Costs is allowed.

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 49 of 52

## TRADE CONTRACT - ATTACHMENT F

## OTHER TRADE CONTRACT DOCUMENTS

**F.1**   **Change Authorization Form**

**F.2**   **Bid Submittal Documents**

| | |
|---|---|
| **F.2.1** | **Bid Form** |
| **F.2.2** | **Breakdown of Base Bid Price** |
| **F.2.3** | **Single Execution Affidavit** |
| **F.2.4** | **DBE Bid Submittal Information** |
| **F.2.5** | **Letter from Surety** |
| **F.2.6** | **Dual Obligee Rider** |

**F.3**   **Addenda**

| | |
|---|---|
| **F.3.1** | **Addendum No. 1** |
| **F.3.2** | **Addendum No. 2** |
| **F.3.3** | **Addendum No. 3** |
| **F.3.4** | **Addendum No. 4** |
| **F.3.5** | **Addendum No. 5** |
| **F.3.6** | **Addendum No. 6** |
| **F.3.7** | **Addendum No. 7** |
| **F.3.8** | **Addendum No. 8** |
| **F.3.9** | **Addendum No. 9** |
| **F.3.10** | **Addendum No. 10** |
| **F.3.11** | **Addendum No. 11** |
| **F.3.12** | **Addendum No. 12** |
| **F.3.13** | **Addendum No. 13** |

**F.4**   **List of Specifications**

**F.5**   **List of Plans and Phasing Plans**

**F.6**   **Scope and Description of Work**

**F.7**   **Dispute Resolution Board (applicable to the Prime Contract)**

**F.8**   **DBE Goals**

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 50 of 52

**F.9 Scope Clarifications**

**F.10 Pre-Bid Schedule (POJV NTD_FO4)**

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B

November 6, 2007
Section 00031
Version 5

Page 51 of 52

# ATTACHMENT F.1 – Change Authorization Form

Parsons-Odebrecht, Joint Venture

CHANGE AUTHORIZATION
No. -SAMPLE

Miami, FL 33299

Phone:
Fax:

DESCRIPTION: DESCRIPTION OF CHANGE

DATE:

PROJECT:

MDAD Contract No.:

TO:

MDAD Project No.:

POJV Contract
or P.O. No.:

POJV Project No.:

RE:    To:    From:    Number:

DESCRIPTION OF CHANGE

Implement the following changes:

A.
B.
C.

This change authorization constitutes full, final, and complete compensation to the Trade Contractor for all costs, expenses, overhead, profit, and any damages of every kind that the Trade Contractor had already incurred or may incur in connection with the above referenced changes in the sequence of any Work, any delay to any Work, any disruption of any Work, any rescheduling of any Work, and any other affect on any of the Work under the Trade Contract. By the execution of this change authorization, the Trade Contractor accepts the contract price change and the contract completion date change, if any, and expressly waives any claims for any additional compensation, damages or time extensions, in connection with the above-referenced changes. Except as herein or heretofore expressly modified, all terms of the original Trade Contract shall remain in full force and effect and shall cover the performance of, and payment for, any work authorized hereunder.

| Item | Description | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|------|-------------|----------|-------|------------|----------|------------|------------|
| 00001 | Sample | 0 | | $0.0000 | 0.00% | $0.00 | $0.00 |
| 00002 | Sample | 0 | | $0.0000 | 0.00% | $0.00 | $0.00 |
| 00003 | Sample | 0 | | $0.0000 | 0.00% | $0.00 | $0.00 |
| 00004 | Sample | 0 | | $0.0000 | 0.00% | $0.00 | $0.00 |

| | | |
|---|---|---|
| Unit Cost Subtotal: | $ | $0.00 |
| Tax on Unit Cost Amount: | | $0.00 |
| Lump Sum Amount: | | $0.00 |
| Tax on Lump Sum Amount: | $ | $0.00 |
| Total: | | $0.00 |

Initials: Seller _____ Buyer _____ / _____

Page 1 of 2

POJV – North Terminal Development Consolidation Program
Trade Contract SC-00068 – Beauchamp Construction Company
Project 747B
Page 52 of 52

November 6, 2007
Section 00031
Version 5

# Attachment F.2

# Bid Submittal Documents

The attached Bid Submittal Documents (Bid Form, Bid Breakdown, Single Execution Affidavits, DBE Information, and Letter from Surety) were submitted with the Original Bid which was due on October 20, 2006. Thereafter, the Trade Contractor was supplied with additional plans, specifications, phasing plans, scheduling information and terms and conditions which have led to revisions to the originally submitted Bid Documents. Therefore, the Trade Contract Price was revised and agreed in the amount of $64,000,000 as reflected in Article 3 of the Trade Contract.)

# Attachment F.2.1

# Bid Form

# SECTION 00002
# Bid Form



## 2A.  BIDDER INFORMATION

BID DUE DATE:

BIDDER  _Beauchamp Construction Company, Inc._

ADDRESS  _2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Florida 33134_

TELEPHONE #: _305-445-0819_

PROGRAM: __North Terminal Development Consolidation Program__

PROJECT: __MIA 747B - A-B Infill__

BID PACKAGE: __#11D – Walls and Ceilings__


## 2B.  GENERAL INFORMATION

**Location of Proposed Construction:**

North Terminal Development Consolidation Program

Miami International Airport


**General Description of Proposed Construction:**

Construction of all work necessary for the work under the Bid Package referenced above for the North Terminal Development Consolidation Program at the Miami International Airport.

## 2C.  BID GUARANTEE

Each Bid must be accompanied by a Bid Guaranty in the form of a cashier's or certified check from any institutional or state bank, made payable to Parsons-Odebrecht, J.V. or as a Bid Bond prepared on the form attached hereto in Specification Section 00005, duly executed by the Bidder as Principal and having a Surety thereon meeting the requirements set forth in the Bid Documents. The Bid Guaranty furnished shall be in an amount not less than five percent (5%) of the Total Amount Bid, including all alternates and allowances.

POJV – North Terminal Development Consolidation Program
Bid Form - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7

September 22, 2006
Section 00002
Version 0

Page 1 of 8

**2D.   THE UNDERSIGNED, AS BIDDER, HEREBY DECLARES THAT:**

The only person or persons interested in this Bid as Principal, or Principals, is or are named herein and that no person other than herein mentioned has any interest in this Bid or in the Trade Contract to be entered into; that this Bid is made without connection with any other person, company or parties making a Bid; and that it is in all respects fair and made in good faith without collusion or fraud.

The Bidder further affirms that it has examined the Bid Documents and the site of the Work and is fully informed in regard to the work to be performed and accepts all conditions pertaining to the place where the work is to be done.

**2E.   THE BIDDER ACKNOWLEDGES RECEIPT OF THE FOLLOWING ADDENDA:**

Addendum # _____1_____ , Dated ___5/26/06___
Addendum # _____2_____ , Dated ___6/02/06___      Addendum # ___13___ , Dated ___10/18/2006___
Addendum # _____3_____ , Dated ___7/27/06___
Addendum # _____4_____ , Dated ___8/16/06___
Addendum # _____5_____ , Dated ___8/31/06___
Addendum # _____6_____ , Dated ___9/01/06___
Addendum # _____7_____ , Dated ___9/22/06___
Addendum # _____8_____ , Dated ___9/25/06___
Addendum # _____9_____ , Dated ___9/28/06___
Addendum # _____10_____ , Dated ___10/04/06___
Addendum # _____11_____ , Dated ___10/05/06___
Addendum # _____12_____ , Dated ___10/10/06___

*Failure to acknowledge addenda shall not relieve such bidder from its obligation under this bid.*

**2F.   THE BIDDER FURTHER AGREES THAT:**

It will contract with Parsons–Odebrecht, J.V., in the form of the Trade Contract attached, in strict accordance with the Bid Documents and to furnish the prescribed Performance and Payment Bonds, each for not less than the Total Contract Price, and to furnish the required evidence of the specified insurance, all within the applicable time allowed herein.

**2G.   DISADVANTAGED BUSINESS ENTERPRISE PROGRAMS**

The Bidder, as applicable, shall comply with the following Contract Measures. __21__%. Contract Measures are based on the Trade Contract Price.

## 2H. COMMUNITY WORKFORCE PROGRAM

The Bidder, as applicable, shall comply with the following contract goal: 29 %. Refer to Specification Section 00022 for additional information.

## 2I. TRADE CONTRACT TIME:

Completion of the Work in accordance with the Pre-Bid Schedule and the Trade Contract Schedule (Schedule of Work) is of the essence.

## 2J. OWNER'S LIQUIDATED DAMAGES

Owner's Liquidated Damages for Non-Compensable Delays to Substantial Completion.

The Owner's Liquidated Damages are established as set forth below and shall not be stacked, pyramided or assessed concurrently. Owner's Liquidated Damages for delays resulting from multiple Trade Contractors shall be apportioned among the responsible parties.

| Milestone | Owner's Liquidated Damages per Calendar Day |
|---|---|
| Obtain Project Substantial Completion: 1,160 Calendar Days from NTP | $5,000 |
| Owner's Liquidated Damages Cap for Project 747B | $1,000,000 |

## 2K. TRADE CONTRACTOR'S LIQUIDATED INDIRECT COSTS

| Milestone | Trade Contractor's Liquidated Indirect Costs per Calendar Day |
|---|---|
| Obtain Project Substantial Completion: 1,160 Calendar Days from NTP | $2,650 |

POJV -- North Terminal Development Consolidation Program
Bid Form - Bid Package #11D -- Walls & Ceilings
Project No. 747B -- Addendum #7

September 22, 2006
Section 00002
Version 0

Page 3 of 8

## 2L.  LUMP SUM BID PRICE

The undersigned, as Bidder, declares that it has carefully examined all Bid Documents and Trade Contract Documents prepared by Parsons–Odebrecht, J.V., the A/Es and the Owner, and being familiar with all of the conditions surrounding the Work, including the availability of materials and labor, hereby proposes to perform Work as described in the Bid Documents and Trade Contract Documents for the Lump Sum Bid of:

Lump Sum Bid Amount (In Figures) _$74,986,441. 00_

Lump Sum Bid Amount (In Words) _Seventy-four Million Nine-hundred Eighty-six Thousand Four Hundred Forty one_ Dollars

## 2M.  UNIT BID PRICES – NOT USED

## 2N.  ALTERNATES – NOT USED

POJV – North Terminal Development Consolidation Program
Bid Form - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7
Page 4 of 8

September 22, 2006
Section 00002
Version 0

20. **SIGNATURE (For use by Individual Proprietorship)**

**The undersigned specifically agrees that:**    N/A

1. If awarded this Trade Contract, it will contract with Parsons–Odebrecht, J.V., in the form of the Trade Contract Agreement attached, in strict accordance with the Bid Documents and to furnish the prescribed Performance and Payment Bonds, each for not less than the Total Contract Price, and to furnish the required evidence of the specified insurance, all within the applicable time allowed herein.

2. Bidder accepts Parsons–Odebrecht, J.V.'s right to waive any and/or all bid discrepancies and/or irregularities.

3. This Bid is valid for a period of 180 days from the date stated below.

Date: _____          <u>Seal</u>

Signed: _____

Title: _____

Name of Firm: _____

Social Security # _____

Legal Address:                    Under the laws of the State of:

_____          _____

_____          _____

Telephone No. _____          (DATE) _____

I hereby certify that the foregoing instrument was acknowledge and executed before me this _____ day of _____, 20____, by _____, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____          Notary Stamp or Seal
(Signature) NOTARY PUBLIC

PRINT NAME: _____

Commission No. _____          My Commission Expires: _____

POJV – North Terminal Development Consolidation Program
Bid Form - Bid Package #11D – Walls & Ceilings
Project No. 7479 – Addendum #7
Page 5 of 8

September 22, 2006
Section 00002
Version 0

**2P.    SIGNATURE (For use by Partnership/Joint Venture)**
**The undersigned specifically agrees that:**    N/A

1.  If awarded this Trade Contract, it will contract with Parsons–Odebrecht, J.V., in the form of the Trade Contract Agreement attached, in strict accordance with the Bid Documents and to furnish the prescribed Performance and Payment Bonds, each for not less than the Total Contract Price, and to furnish the required evidence of the specified insurance, all within the applicable time allowed herein.

2.  Bidder accepts Parsons–Odebrecht, J.V.'s right to waive any and/or all bid discrepancies and/or irregularities.

3.  This Bid is valid for a period of 180 days from the date stated below.

Date: _____          <u>Seal</u>

Signed: _____

Title: _____

Name of Firm: _____

FIN # _____

Legal Address of Partnership/JV          Under the laws of the State of:

_____          _____

_____          _____

Telephone No. _____          (DATE) _____

**Name of Managing Partner:** _____

Post Office Address: _____

_____

**Name of Partner:** _____

Post Office Address: _____

_____

**Name of Partner:** _____

Post Office Address: _____

_____

POJV – North Terminal Development Consolidation Program
Bid Form - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7
Page 6 of 8

September 22, 2006
Section 00002
Version 0

Name of Partner: _____

Post Office Address: _____

_____

Name of Partner: _____

Post Office Address: _____

_____

I hereby certify that the foregoing instrument was acknowledge and executed before me this _____ day of _____, 20____, by _____, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____          Notary Stamp or Seal
(Signature) NOTARY PUBLIC
PRINT NAME: _____
Commission No. _____          My Commission Expires: _____

**2Q. SIGNATURE (For use by Corporation)**
The undersigned specifically agrees that:

1. If awarded this Trade Contract, it will contract with Parsons–Odebrecht, J.V., in the form of the Trade Contract Agreement attached, in strict accordance with the Bid Documents and to furnish the prescribed Performance and Payment Bonds, each for not less than the Total Contract Price, and to furnish the required evidence of the specified insurance, all within the applicable time allowed herein.

2. Bidder accepts Parsons–Odebrecht, J.V.'s right to waive any and/or all bid discrepancies and/or irregularities.

3. This Bid is valid for a period of 180 days from the date stated below.

Date:      October 20, 2006          <u>Seal</u>

Signed:      *Donald L. Crissey*

Title:      Donald L. Crissey, President

Name of Firm:      Beauchamp Construction Company, Inc.

FIN #      59-2051286

| Legal Address: | Under the laws of the State of: |
|---|---|
| 2100 Ponce De Leon Blvd., Suite 825 | Florida |
| Coral Gables, Florida 33134 | |
| Telephone No. 305-445-0819 | (DATE) October 20, 2006 |

**Name of President:**      Donald L. Crissey

**Name of Secretary:**      Blaik P. Ross

**Name of Treasurer:**      Maribel Hart

I hereby certify that the foregoing instrument was acknowledge and executed before me this __20__ day of __October__, 20_06_, by Donald L. Crissey _____, who is **personally known** to me or who has produced _____ as identification and who did take an oath.

_____
(Signature) NOTARY PUBLIC
PRINT NAME: Denise Rusinque

Commission No. _____

Notary Stamp or Seal Denise Rusinque
My Commission DD224537
Expires June 22, 2007

My Commission Expires: _____

POJV – North Terminal Development Consolidation Program
Bid Form - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7
Page 8 of 8

September 22, 2006
Section 00002
Version 0

# Attachment F.2.2

# Breakdown of Bid Price

# SECTION 00003
# Breakdown of Bid Prices

## 3A.    BIDDER INFORMATION

BID DUE DATE:    Oct. 20, 2006

BIDDER    Beauchamp Construction Company, Inc.

ADDRESS    2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Florida 33134

TELEPHONE #:    305-445-0819

PROGRAM: **North Terminal Development Consolidation Program**

PROJECT: **MIA 747B - A-B Infill**

BID PACKAGE: **#11D - Walls & Ceilings**

## 3B.    BREAKDOWN OF LUMP SUM BID PRICE

Bidders shall breakdown the Lump Sum Bid Price as set forth below. All spaces of the Bid Breakdown Form shall be filled by the bidder with a dollar amount clearly. Failure to fill in a space below shall not relieve the Bidder from providing all scope for the Bid Package in accordance with the Trade Contract Documents including Attachment A Scope and Description of Work without additional cost to the MGC and the Owner.

### Division 2

| Spec. | Description | Amount |
|---|---|---|
| 02070, 02071 | Selective Demolition, Cutting & Patching | $ 1,796,868. 00 |
|  | Balance of Division 2 Costs | $ 2,187,472. 00 |
|  | SUB TOTAL | $ 3,984,340. 00 |

POJV – North Terminal Development Consolidation Program
Breakdown of Bid Prices - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7

September 22, 2006
Section 00003
Version 0

Page 1 of 5

## Division 3

| Spec. | Description | Amount |
|---|---|---|
| 03355, 03505 | Concrete Sealing & Floor Underlayment | $ 83,749. |
| | Balance of Division 3 Costs | $ 20,937. |
| | SUB TOTAL | $ 104,686 |

## Division 5

| Spec. | Description | Amount |
|---|---|---|
| 05500, 05521 | Metal Fabrications, Pipe & Tube Railings | $ 1,376,983. |
| 05522 | Glass Railings | 177,382 |
| 05810 | Expansion Joint Cover Assemblies | 263,674. |
| | Balance of Division 5 Costs | 454,509. |
| | SUB TOTAL | $ 2,272,548. |

## Division 6

| Spec. | Description | Amount |
|---|---|---|
| 06100 | Rough Carpentry | 330,587. |
| | Balance of Division 6 Costs | 82,646 |
| | SUB TOTAL | $ 413,233 |

## Division 7

| Spec. | Description | Amount |
|---|---|---|
| 07100 | Fluid Applied Waterproofing | 34,897. |
| 07213, 07216 | Insulation | 619,888. |
| 07255, 07280, 07814, 07840 | Fireproofing | 2,787,712. |
| 07900 | Joint Sealers | 242,701 |
| | Balance of Division 7 Costs | 921,299 |
| | SUB TOTAL | $ 4,606,497. |

POJV – North Terminal Development Consolidation Program
Breakdown of Bid Prices - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7

September 22, 2005
Section 00003
Version 0

Page 2 of 5

## Division 8

| Spec. | Description | Amount |
|---|---|---|
| 08305 | Access Doors — INSTALL ONLY | 21,089.— |
| 08410 | Aluminum Entrances & Storefronts | 63,629.— |
| 08450 | All Glass Entrances and Wall Systems | IN GLAZING |
| 08520 | Aluminum Windows | 30,625.— |
| 08710 | Finish Hardware | 0. |
| 08800 | Glazing | 3,562,349.— |
| | Balance of Division 8 Costs | 919,423.— |
| | SUB TOTAL | $ 4597115.— |

## Division 9

| Spec. | Description | Amount |
|---|---|---|
| 09205, 09260, 09270 | Furring, Lathing & Gypsum Board Systems | 22,652,518. |
| 09220, 09225 | Portland Cement Plaster (Stucco & Interior) | 4,050,038. |
| 09511, 09515, 09545, 09547, 09548, 09580 | Ceiling Systems | 5,140,521, |
| 09750 | Interior Stone Facing | 1,092,757 |
| 09770 | Metal Column Covers and Column Base | 2,606,733 |
| 09775 | Metal Wall Panels and Base | 6,019,971 |
| 09780, 09785 | Back Painted Glass & Decorative Wall Panels | 4,611,082 |
| 09835, 09900 | Elastomeric Coatings & Painting | 924,000. |
| | Balance of Division 9 Costs | 11,774,406 |
| | SUB TOTAL | # 58,872,026 |

POJV – North Terminal Development Consolidation Program
Breakdown of Bid Prices - Bid Package #11D – Walls & Ceilings
Project No. 747B – Addendum #7
Page 3 of 5

September 22, 2006
Section 00050
Version 0

## Division 10

| Spec. | Description | Amount |
|-------|-------------|--------|
| 10250 | Automated External Defibrillator (AED) Cabinets | 9,226. — |
| 10260 | Wall and Corner Guards | 58,481. — |
| 10522 | Fire Extinguishers, Cabinets & Accessories | 41,090. — |
| | Balance of Division 10 Costs | 27,199. — |
| | SUB TOTAL | $ 135,996. |

| TOTAL LUMP SUM BID PRICE (Must be identical to the Lump Sum Bid Price shown on Bid Form) | $ 74,986,441. 00 |
|---|---|

POJV – North Terminal Development Consolidation Program
Breakdown of Bid Prices - Bid Package #11D – Walls & Ceilings
Project No. 747B - Addendum #7

September 22, 2006
Section 00003
Version 0

Page 4 of 5

3C.   SIGNATURE:

Date: _OCTOBER 24, 2006_          Seal

Signed: _[signature]_

Title: _DEAN A. THOMAS  EXEC. VICE PRES._

Name of Firm: _BEAUCHAMP CONSTRUCTION COMPANY, INC._

Organized as a: (Mark one)

|                | |          | |
|----------------|--|---------|--|
| Proprietorship | _____ | SS #: | _____ |
| Partnership    | _____ | FIN#: | _[crossed out]_ |
| Corporation    | _X_ | FIN#: | _59-2051286_ |

Legal Address:                 Under the laws of the State of:

_2100 PONCE DE LEON BLVD._          _FLORIDA._
_SUITE 825_
_CORAL GABLES, FL. 33134_          _____

Telephone No. _305.445.0819_          (DATE) _OCT 24, 2006_ .

I hereby certify that the foregoing instrument was acknowledge and executed before me this _24_
day of _OCT_ , 200_6_ by _Dean Thomas_ _____, who is personally known to
me or who has produced _____ as identification and who did take an oath.

_[signature]_
(Signature) NOTARY PUBLIC

                                        Notary Stamp or Seal

PRINT NAME: _Denise Kisrope_          Lania Ovide
                                        My Commission DD289940
                                        Expires February 10, 2008

Commission No. _____          My Commission Expires: _____

# Attachment F.2.3

# Single Execution Affidavit

# SECTION 00004

## SINGLE EXECUTION AFFIDAVITS

This sworn statement is submitted with the Bid for:

PROGRAM NAME: **North Terminal Development Consolidation Program**

PROJECT: ___MIA 747B-A-B infill___

BID PACKAGE NUMBER___11D-Walls and Ceilings___

COUNTY OF **MIAMI-DADE**

STATE OF **FLORIDA**

Before me the undersigned authority appeared ___Donald L. Crissey___ (Print Name) who is personally known to me or who has provided _____ as identification and who did (did not) take an oath, and who stated:

That he is duly authorized representative of

___Beauchamp Construction Company, Inc.___
### (Name of Bidder)

___2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Florida 33134___
### (Address of Bidder)

Hereinafter referred to as the contracting entity being its

___President___

(Sole Proprietor) (Partner) (President or Other Authorized Officer)

and as such has full authority to make the following Bidder Affidavits.

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B
Page 1 of 13

January 23, 2006
Section 00004
Version 0

## AFFIDAVIT NO. 1

## SWORN STATEMENT UNDER SECTION 287.133
## FLORIDA STATUTES, ON PUBLIC ENTITY CRIMES

1. I understand that a "public entity crime" as defined in Paragraph 287.133(1)(g), **Florida Statutes**, means a violation of any state or federal law by a person with respect to and directly related to the transaction of business with any public entity or with an agency or political subdivision of any other state or with the United States, including, but not limited to, any bid or contract for goods or services to be provided to any public entity or an agency or political subdivision of any other state or of the United States and involving antitrust, fraud, theft, bribery, collusion, racketeering, conspiracy, or material misrepresentation.

2. I understand that "convicted" or "conviction" as defined in Paragraph 287.133(1)(b), **Florida Statutes**, means a finding of guilt or a conviction of a public entity crime, with or without an adjudication of guilt, in any federal or state trial court of record relating to charges brought by indictment or information after July 1, 1989, as a result of a jury verdict, nonjury trial, or entry of a plea of guilty or nolo contendere.

3. I understand that an "affiliate" as defined in Paragraph 287.133(1)(a), **Florida Statutes**, means:

    1. A predecessor or successor of a person convicted of a public entity crime; or

    2. An entity under the control of any person who is active in the management of the entity and who has been convicted of a public entity crime. The term "affiliate" includes those officers, director, executives, partners, shareholders, employees, members, and agents who are active in the management of an affiliate. The ownership by one person of shares constituting a controlling interest in another person, or a pooling of equipment or income among persons when not for fair market value under an arm's length agreement, shall be a prima facie case that one person controls another person. A person who knowingly enters into a joint venture with a person who has been convicted of a public entity crime in Florida during the preceding 36 months shall be considered an affiliate.

4. I understand that a "person" as defined in Paragraph 287.133(1)(e), **Florida Statutes**, means any natural person or entity organized under the laws of any state or of the United States with the legal power to enter into a binding contract and which bids or applies to bid on contracts for the provision of goods or services let by a public entity, or which otherwise transacts or applies to transact business with a public entity. The term "person" includes those officers, directors, executives, partners, shareholders, employees, members and agents who are active in management of an entity.

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

January 23, 2006
Section 00004
Version 0

Page 2 of 13

5. Based on information and belief, the statement which I have marked below is true in relation to the entity submitting this sworn statement. [Please indicate which statement applies.]

__XX__Neither the entity submitting this sworn statement, nor any officers, directors, executives, partners, shareholders, employees, members, or agents who are active in management of the entity, nor any affiliate of the entity have been charged with and convicted of a public entity crime subsequent to July 1, 1989.

_____The entity submitting this sworn statement, or one or more of the officers, directors, executives, partners, shareholders, employees, members, or agents who are active in management of the entity, or an affiliate of the entity has been charged with and convicted of a public entity crime subsequent to July 1, 1989, AND [Please indicate which additional statement applies.]

_____There has been a proceeding concerning the conviction before a hearing officer of the State of Florida, Division of Administrative Hearings. The final order entered by the hearing officer did not place the person or affiliate on the convicted vendor list. **[Please attach a copy of the final order.]**

_____The person or affiliate was placed on the convicted vendor list. There has been a subsequent proceeding before a hearing officer of the State of Florida, Division of Administrative Hearings. The final order entered by the hearing officer determined that it was in the public interest to remove the person or affiliate from the convicted vendor list. **[Please attach a copy of the final order.]**

_____The person or affiliate has not been placed on convicted vendor list. **[Please describe any action taken by or pending with the Florida Department of General Services.]**

### AFFIDAVIT NO. 2

### CRIMINAL RECORD AFFIDAVIT

Above named bidder, as of the date of bid submission:

__XX__ has not been convicted of a felony during the past ten (10) years, nor does it, as of the date of bid submission, have an officer, director or executive who has been convicted of a felony during the past ten (10) years.

_____has been convicted of a felony during the past ten (10) years, or as of the date of bid submission, has an officer, director or executive who has been convicted of a felony during the past ten (10) years.

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

January 23, 2006
Section 00004
Version 0

Page 3 of 13

## AFFIDAVIT NO. 3

## MIAMI DADE COUNTY DEBARMENT DISCLOSURE AFFIDAVIT PURSUANT TO COUNTY CODE 10-38

Bidder or his agents, officers, principals, stockholders, subcontractors or their affiliates are not debarred by Miami-Dade County.

## AFFIDAVIT NO. 4

## FLORIDA TRENCH SAFETY ACT (Section 553.60-553.64, Florida Statues)

1. By submission of his bid and subsequent execution of this Trade Contract, the undersigned Bidder certifies that as successful Bidder (Contractor) all trench excavation done within his control (by his own forces or by his subcontractors) shall be accomplished in strict adherence with OSHA Trench Safety Standards contained in 29 C.F.R., s. 1926, 650, Subpart P, including all subsequent revisions or updates to these standards as adopted by the Department of Labor and Employment Security.

2. The undersigned Bidder certifies that as successful Bidder (Contractor) he has obtained or will obtain identical certification from his proposed subcontractors that will perform trench excavation prior to award of the subcontracts and that he will retain such certifications in his files for a period of not less than three years following final acceptance.

3. The Bidder acknowledges that included in the various items listed in the Schedule of Prices Bid and in the Total Amount Bid are cost for complying with the Florida Safety Act (Sections 553.60-553.64, Florida Statutes). The Bidder further identifies the cost to be summarized below:

| | Trench Safety Measure (Description) | Units of Measure (LF.SY) | Unit Quantity | Unit Cost | Extended Cost |
|---|---|---|---|---|---|
| A. | N/A | | | | $ |
| B. | | | | | $ |
| C. | | | | | $ |
| | | | | Total | $ |

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

January 23, 2006
Section 00004
Version 0

Page 4 of 13

## AFFIDAVIT NO. 5

## CONTRACTOR'S DISCLOSURE AFFIDAVIT FOR MIAMI-DADE COUNTY

### PART I - OWNERSHIP

Publicly Traded Corporations are exempt from this Part I requirement, but must indicate by letter that it is a Publicly Traded Corporation and include the name of the stock exchange market and symbol where registered.

That the information given herein and in the documents attached hereto is true and correct.

1. The full legal name and business address of the person or entity (Contractor) contracting with Parsons-Odebrecht, J.V.

   Beauchamp Construction Company, Inc.

   2100 Ponce De Leon Blvd , Suite 825, Coral Gables, Florida 33134

2. If the contract or business transaction is with a Corporation, provide the full legal name and business address and title for each officer.

   See Attached

3. If the contract or business transaction is with a Corporation, provide the full legal name and business address for each director.

   See Attached

4. If the contract or business transaction is with a Corporation, provide the full legal name and business address for each stockholder who holds directly or indirectly five percent (5%) or more of the corporation's stock and state the percentage.

   See Attached

5. If the contract or business transaction is with a Trust, provide the full legal name and address for each trustee and each beneficiary. All such names and addresses are:

   N/A

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

January 23, 2006
Section 00004
Version 0

Page 5 of 13

## AFFIDAVIT NO. 5
## Contractor's Disclosure Affidavit for Miami-Dade County

## Part 1-Ownership

### 2.-LIST OF OFFICERS AND BUSINESS ADDRESS

| | |
|---|---|
| JAMES B.D. BEAUCHAMP, Chief Executive Officer, | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| DONALD L. CRISSEY, President | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| DEAN A. THOMAS, Executive Vice President | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| BENJAMIN K. ARTZT, Senior Vice President | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| DANIEL L. BEAUCHAMP, Vice President | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| BRADFORD N. SMITH, Vice President | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| MARIBEL HART, Corporate Treasurer | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| BLAIK P. ROSS, Corporate Secretary | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |

### 3. LIST OF DIRECTORS-FULL LEGAL NAME AND BUSINESS ADDRESS:

| | |
|---|---|
| JAMES B.D. BEAUCHAMP | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| DONALD L. CRISSEY | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| DEAN A. THOMAS | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| BENJAMIN K. ARTZT | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| DANIEL L. BEAUCHAMP | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| MARIBEL HART | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 |
| TIBOR HOLLO | 100 South Biscayne Blvd., # 900, Miami, Florida 33131 |

### 4. FULL LEGAL NAME, BUSINESS ADDRESS AND CORPORATION'S STOCK 5% OR MORE.

| | | |
|---|---|---|
| JAMES B.D. BEAUCHAMP | 2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Fl. 33134 | 29% |
| DONALD L. CRISSEY | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 | 27% |
| DEAN A. THOMAS | 2100 Ponce De Leon Blvd., # 825, Coral Gables, Fl. 33134 | 25% |
| DANIEL L. BEAUCHAMP | 2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Fl. 33134 | 7% |
| TIBOR HOLLO | 100 South Biscayne Blvd., Suite 1100, Miami. Fl. 33131 | 5% |

6.  The full legal name and business address of any other individuals (other than subcontractors, suppliers, laborers or lenders) who have, or will have any interest (legal, equitable, beneficial or otherwise) in the contract or business transaction with Parsons-Odebrecht, J.V are:

    N/A
    _____
    _____

7.  If a Corporate Joint Venture, list the names and titles of the Officers of the Corporate Members of the Joint Venture:    N/A

    (a) President _____          (b) President _____

        Vice-Pres _____              Vice-Pres _____

        Secretary _____              Secretary _____

        Treasurer _____              Treasurer _____

8.  If a Non-Corporate Partnership or Joint Venture, list names of the Principals of the Non-Corporate Partnership of Joint Venture:  N/A

    (c) _____                     (d) _____
              (Name)                                       (Name)

        _____                         _____
              (Title)                                      (Title)


## PART II – EMPLOYMENT DISCLOSURE

1.  Does your firm have a collective bargaining agreement with its employees:

                    Yes ( )                    No (x)

2.  Does your firm provide health care benefits for its employees?

                    Yes ( x )                  No ( )

3. Provide a current breakdown (number of persons) of your firm's work force and ownership as to race, national origin and gender:

% of Ownership

| | | | | | | |
|---|---|---|---|---|---|---|
| White: | 28 Males | 1 Females | Asian: | _____Males | _____Females | 97% |
| Black: | 11 Males | 1 Females | Native American: | _____Males | _____Females | 0% |
| Hispanics: | 15 Males | 8 Females | Alaska Natives: | _____Males | _____Females | 3% |
| _____: | _____Males | _____Females | _____: | _____Males | _____Females | |

## PART III – CONTRACT HISTORY

LIST ALL CONSTRUCTION OR PROCUREMENT CONTRACTS IN EFFECT WITH MIAMI-DADE COUNTY DURING THE LAST FIVE (5) YEARS:

| CONTRACT DATE | DOLLAR AMOUNT OF ORIGINAL CONTRACT | FINAL AMOUNT OF CONTRACT | PERCENTAGE DIFFERENTIAL |
|---|---|---|---|
| See Attached (1) _____ | $_____ | $_____ | _____% |
| Summary of Work performed | General Construction _____ |
| | _____ |
| Litigation Arising out Of contract | None _____ |
| | _____ |
| | _____ |

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

Page 7 of 13

January 23, 2006
Section 00004
Version 0

| CONTRACT DATE | DOLLAR AMOUNT OF ORIGINAL CONTRACT | FINAL AMOUNT OF CONTRACT | PERCENTAGE DIFFERENTIAL |
|---|---|---|---|

(2)

_____  $_____  $_____  _____%

Summary of
Work performed  _____

_____

Litigation
Arising out  _____
Of contract  _____

_____


(3)

_____  $_____  $_____  _____%

Summary of
Work performed  _____

_____

Litigation
Arising out  _____
Of contract  _____

_____


(4)

_____  $_____  $_____  _____%

Summary of
Work performed  _____

_____

Litigation
Arising out  _____
Of contract  _____

_____


**(BIDDER: ADD EXTRA SHEETS IF NEEDED)**

## III CONTRACT HISTORY FOR MIAMI-DADE
### _Last 5 years_

| Project | Contract Date | Contract Amount | Owner Address and Phone Number | Architect Address and Phone Number | Description | Completion Date or Percent Complete |
|---------|---------------|-----------------|-------------------------------|-----------------------------------|-------------|-------------------------------------|
| Deering Estates | 1/1998-1/2002 | 8M | Deering Estates Foundation 16701 SW 72 Avenue Miami, Florida 33157 305-235-1668 | Fullerton Diaz 366 Altara Avenue Coral Gables, Florida 33146 305-442-4200 |  Historical Renovations | 100% |

## CONTRACT HISTORY IN MIAMI-DADE

| Project | Contract Date | Contract Amount | Owner Address and Phone Number | Architect Address and Phone Number | Description | Completion Date or Percent Complete |
|---------|---------------|-----------------|-------------------------------|-----------------------------------|-------------|-------------------------------------|
| Opera Towers | 04/2005 | 100M | Florida East Coast Realty 100 South Biscayne Blvd., Suite 1100 Miami, Florida 33131 305-358-7710 | Civica 5910 SW 35 Steet Miami, Florida 33155 305-790-1358 |  Condominium 1,124,000 sq. ft | 36% |
| Edison Marketplace | 06/2005 | 9M | Peninsula Developers 555 NE 15 Street, Suite 213 Miami, Florida 33132 305-375-0390 | A J Verde 5979 NW 151 Street, Suite 216 Miami Lakes, Florida 33014 305-558-3500 |  81,000 sq. ft. Shopping Plaza | 50.46% |
| Regent South Beach _(JV)_ | 08/2003 | 24 M | South Beach Resort Development 1501 Collins Avenue, Suite 206 Miami Beach, Florida 33139 305-672-4554 | Arquitectonica 801 Brickell Avenue, Suite 1100 Miami, Florida 33131 305-372-1812 |  Hotel | 90.53% |

# BEAUCHAMP
## CONSTRUCTION CO.

| Project | Contract Date | Contract Amount | Owner<br>Address and Phone Number | Architect<br>Address and Phone Number | Description | Completion Date or Percent Complete |
|---|---|---|---|---|---|---|
| Brickell Bay Plaza | 05/2001 | 63M | Florida East Coast Realty<br>100 South Biscayne Blvd., Suite 1100<br>Miami, Florida 33131<br>305-358-7710 | Moche Cosicher Architects<br>700 51 Street<br>Miami, Florida 33140<br>305-867-7791 | 1,242,469 sq. ft.<br>Apartment Building | 99.98% |
| 2020 Ponce | 11/2005 | 40M | 2020 L.L.C.<br>100 South Biscayne Blvd., Suite 1100<br>Miami, Florida 33131<br>305-358-7710 | Ted Roux Architects<br>116 Giralda Avenue<br>Coral Gables, Florida 33134<br>305-443-8116 | 130,000 sq. ft.<br>Office/Condo | 00% |
| 121 Alhambra Tower | 07/2000 | 30M | The Allen Morris Company<br>121 Alhambra Plaza, PH1<br>Coral Gables, Florida 33134<br>305-443-1000 | ACI, Inc.<br>955 Pennsylvania Avenue<br>Winter Park, Florida 32789<br>407-740-8405 | Class A<br>Office Building | 100% |

Barry University

| | | | Barry University<br>11300 NE 2 Avenue<br>Miami Shores, Florida 33161<br>305-899-3052 | Harper Partners<br>201 Alhambra Circle, Suite 800<br>Coral Gables, Florida 33134<br>305-476-1102 | Various Projects | |
|---|---|---|---|---|---|---|
| ▪ Sylvester Tower | 10/2005 | 75,000 | | | | 100% |
| ▪ Residence II | 06/2004 | 5.M | | | | 100% |
| ▪ Student Union | 08/2001 | 9 M | | | | 100% |
| ▪ Residence I | 08/2001 | 5 M | | | | 100% |
| ▪ Classrooms | 09/2000 | 1.2 M | | | | 100% |

# BEAUCHAMP
## CONSTRUCTION CO.

| Project | Contract Date | Contract Amount | Owner Address and Phone Number | Architect Address and Phone Number | Description | Completion Date or Percent Complete |
|---|---|---|---|---|---|---|
| Table 8 | 09/2005 | 1.5 M | Meridian Entertainment Group 7661 Melrose Avenue, Suite 3 Los Angeles, California 90046 323-782-8255 | Upstairs Studio, Inc. 3850 NE Miami Court Miami, Florida 33137 305-573-1400 | Restaurant | 70% |
| Holiday Inn Express | 02/2006 | 9.2M | Pinelands-Kendall Hotel, L.L.C. 5414 NW 72 Avenue Miami, Florida 33166 305-254-8000 | Cabrera Ramos Architect 3625 NW 82 Avenue, Suite 314 Miami, Florida 33166 305-593-0750 |  61,840 sq. ft. Hotel | 0% |
| 1170 Kane Concourse | 03/2005 | 5 M | 1170 Kane Concourse Group Inc. 701 Brickell Avenue, Suite 1250 Miami, Florida 33130 305-358-7710 | William E. Tschumy Jr. & Assoc. 2346 Douglas Road Coral Gables, Florida 33134 (305) 446-1789 |  47,000 sq. ft. Office | 61.47% |
| The George Sales Center | 02/2006 | 600,000 | City Centre Properties, L.L.C. One Overton Park 3625 Cumberland Blvd., Suite 400 Atlanta, Georgia 30339 770-818-4180 | Ed Lewis Architects 250 Bird Road, Suite 212 Coral Gables, Florida 33146 305-445-0835 | Sales Center | 37.23% |
| Quayside Townhomes | 10/2001 | 12M | Florida East Coast Realty 100 South Biscayne Blvd., Suite 1100 Miami, Florida 33131 305-358-7710 | Moche Cosicher Architecs 700 51 Street Miami, Florida 33140 305-867-7791 |  57 Unit Townhomes | 100% |

# BEAUCHAMP
## CONSTRUCTION CO.

| Project | Contract Date | Contract Amount | Owner Address and Phone Number | Architect Address and Phone Number | Description | Completion Date or Percent Complete |
|---|---|---|---|---|---|---|
| Bay Parc Plaza | 10/1998 | 37.5M | Florida East Coast Realty 100 South Biscayne Blvd., Suite 1100 Miami, Florida 33131 305-358-7710 | Carr Smith Corradino 4055 NW 97 Terrace Medley, Florida 33178 |  Apartment Building | 100% |
| Crescent House Apartments | 11/1998 | 17M | The Graham Companies 6843 Main Street Miami Lakes, Florida 33014 305-821-11300 | Roger Fry Architects 2790 Bird Avenue Coconut Grove, Florida 22014 305-446-7788 |  286 Unit Rental Units | 100% |
| Somerville Apartments | 06/1999 | 5M | Camilus House 336 NW 5 Street Miami, Florida 33128 305-374-1065 | Rodriguez & Quiroga 2100 Ponce De Leon Blvd., Mezanine Coral Gables, Florida 33134 |  | 100% |

## PART IV – CONTRACT REFERENCES

A.  How long has the firm been in business?        October 1980

B.  Has the firm, or the principals of the firm, ever done business under another name or with another

    firm?    See Attached         If so, attach separate sheet(s) listing same

    information as in parts I, II and III of this affidavit.

C.  Provide a representative listing of your firm's private sector business for the last five (5) years:
    (minimum of 5 listings)    See Attached

|     | NAME OF CLIENT | DESCRIPTIVE TITLE OF PROJECT |
|-----|----------------|------------------------------|
| (1) |                |                              |
|     |                |                              |
|     |                |                              |
|     |                |                              |
|     |                |                              |
| (2) |                |                              |
|     |                |                              |
|     |                |                              |
|     |                |                              |
| (3) |                |                              |
|     |                |                              |
|     |                |                              |
|     |                |                              |
| (4) |                |                              |
|     |                |                              |
|     |                |                              |
|     |                |                              |

POJV – North Terminal Development Consolidation Program          January 23, 2006
Single Execution Affidavit                                      Section 00004
Project No. 747B                                                 Version 0

Page 9 of 13

## Part IV-Contract References.

**B.-Has the firm, or the principals of the firm, ever done business under another name or with another firm?** List the same information as in parts I, II, III

### Part I
1. **Fast Construction Group, L.L.C.**
   Registered Address: 2341 NW 97 Street, Miami, Florida 33147

2. Officers as follows:
   Benjamin K. Artzt, Manager
   Max Turbides, Manager

3. Mailing Address: 2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Florida 33134

### Part II
1. Does your firm have a collective bargaining agreement with its employees:          NO
2. Does your firm provide health care benefits for its employees?          YES
3. Provide a current breakdown (number of persons your firm's work force and ownership as to race, national orgin and gender. White 1___ Black 1___

### Part III
Projects Include: Opera Towers          $1.5M          36%

---

### Part I
1. **Drybuild Interiors L.L.C.**
   Registered Address: 247 Minorca Avenue, Coral Gables, Florida 33134

2. Officers as follows:
   Fernando Arguello, Manager
   Dean A. Thomas, Manager
   Business Address:  2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Florida 33134

3. Mailing Address: 2100 Ponce De Leon Blvd., Suite 825, Coral Gables, Florida 33134

### Part II
1. Does your firm have a collective bargaining agreement with its employees:          NO
2. Does your firm provide health care benefits for its employees?          YES
3. Provide a current breakdown (number of persons your firm's work force and ownership as to race, national origin and gender.  White 1___ Hispanic 1___

### Part III

| Projects Include: |  |  |  |
|---|---|---|---|
| Barry Student Union | .6M | 100% |
| DGN Towers | .5M | 100% |
| Brickell Bay Plaza | 3M | 100% |

# BEAUCHAMP
## CONSTRUCTION CO.

## IV CONTRACT REFERENCES

## C. PRIVATE SECTOR BUSINESS
### *Last 5 Years*

| PROJECT | OWNER ADDRESS AND PHONE NUMBER | DESCRIPTION |
|---------|-------------------------------|-------------|
| Holiday Inn Express | Pinelands-Kendall Hotel, L.L.C.<br>5414 NW 72 Avenue<br>Miami, Florida 33166<br>305-254-8000 | <br>61,840 sq. ft.<br>Hotel |
| Opera Towers | Florida East Coast Realty<br>100 South Biscayne Blvd., Suite 1100<br>Miami, Florida 33131<br>305-358-7710 | <br>Condominium<br>1,124,000 sq. ft |
| 2020 Ponce | 2020 L.L.C.<br>100 South Biscayne Blvd., Suite 1100<br>Miami, Florida 33131<br>305-358-7710 | <br>130,000 sq. ft.<br>Office/Condo |

# BEAUCHAMP

## CONSTRUCTION CO.

| PROJECT | OWNER ADDRESS AND PHONE NUMBER | DESCRIPTION |
|---|---|---|

1170 Kane Concourse

1170 Kane Concourse Group Inc.
701 Brickell Avenue, Suite 1250
Miami, Florida 33130
305-358-7710



47,000 sq. ft.
Office

Edison Marketplace

Peninsula Developers
555 NE 15 Street, Suite 213
Miami, Florida 33132
305-375-0390



81,000 sq. ft.
Shopping Plaza

Regent South Beach *(JV)*

South Beach Resort Development
1501 Collins Avenue, Suite 206
Miami Beach, Florida 33139
305-672-4554



Hotel

The George Sales Center

City Centre Properties, L.L.C.
One Overton Park
3625 Cumberland Blvd., Suite 400
Atlanta, Georgia 30339
770-818-4180

# BEAUCHAMP CONSTRUCTION CO.

| PROJECT | OWNER ADDRESS AND PHONE NUMBER | DESCRIPTION |
|---|---|---|

Table 8

Meridian Entertainment Group
7661 Melrose Avenue, Suite 3
Los Angeles, California 90046
323-782-8255

Restaurant

Brickell Bay Plaza

Florida East Coast Realty
100 South Biscayne Blvd., Suite 1100
Miami, Florida 33131
305-358-7710



1,242,469 sq. ft.
Apartment Building

Barry University
- Medical Arts Bldg.
- Sylvester Tower
- Residence II
- Student Union
- Residence I
- Classrooms

Barry University
11300 NE 2 Avenue
Miami Shores, Florida 33161
305-899-3052



Various Projects

DGN Towers

Miami Jewish Homes
5200 NE 2 Avenue
Miami, Florida 33137
305-751-8626



Douglas Gardens North

121 Alhambra Tower

The Allen Morris Company
121 Alhambra Plaza, PH1
Coral Gables, Florida 33134
305-443-1000



Class A
Office Building

# BEAUCHAMP CONSTRUCTION CO.

| PROJECT | OWNER ADDRESS AND PHONE NUMBER | DESCRIPTION |
|---|---|---|
| Quayside Townhomes | Florida East Coast Realty<br>100 South Biscayne Blvd., Suite 1100<br>Miami, Florida 33131<br>305-358-7710 | <br>57 Unit Townhomes |
| St. Boniface | Catholic Health Services<br>4790 North State Road 7<br>Lauderdale Lakes, Florida 33139<br>954-484-1515 |  |
| Deering Estates | Deering Estates Foundation<br>16701 SW 72 Avenue<br>Miami, Florida 33157<br>305-235-1668 | <br>Historical Renovations |
| Bay Parc Plaza | Florida East Coast Realty<br>100 South Biscayne Blvd., Suite 1100<br>Miami, Florida 33131<br>305-358-7710 | <br>Apartment Building |
| Crescent House Apartments | The Graham Companies<br>6843 Main Street<br>Miami Lakes, Florida 33014<br>305-821-11300 | <br>286 Unit Rental Units |
| Somerville Apartments | Camilus House<br>336 NW 5 Street<br>Miami, Florida 33128<br>305-374-1065 |  |

|       | NAME OF CLIENT | DESCRIPTIVE TITLE OF PROJECT |
|-------|----------------|------------------------------|
| (5)   |                |                              |
|       |                |                              |
|       |                |                              |
|       |                |                              |
|       |                |                              |

(BIDDER: ADD EXTRA SHEETS IF NEEDED)

## AFFIDAVIT NO. 6

### DRUG-FREE WORK PLACE CERTIFICATION

The entity named above certifies that the firm will provide a drug free workplace in compliance with Section 2-8.1.2(B) of the Code of Miami-Dade County.

## AFFIDAVIT NO. 7

### DISABILITY NONDISCRIMINATION CERTIFICATION

That the above named entity is in compliance with and agrees to continue to comply with, and assure that any subcontractor, or third party contractor under this project complies with all applicable requirements of the laws listed below including, but not limited to, those provisions pertaining to employment, provision of programs and services, transportation, communications, access to facilities, renovations, and new construction.

The Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, 104 Stat 327, 42 U.S.C. 12101-12213 and 47 U.S.C. Sections 225 and 611 including Title I, Employment; Title II, Public Services; Title III, Public Accommodations and Services Operated by Private Entities; Title IV, Telecommunications; and Title V, Miscellaneous Provisions.

The Rehabilitation Act of 1973, 29 U.S.C. Section 794
The Federal Transit Act, as amended 49 U.S.C. Section 1612
The Fair Housing Act as amended, 42 U.S.C. Section 3601-3631
Miami-Dade County Resolution No. R-385-95

Any contract entered into based upon a false certification submitted pursuant to resolution No. R-385-95 shall be voidable. If any attesting firm violates any of the Acts during the term of any contract such firm has with the County, such contract shall be voidable, even if the attesting firm was not in violation at the time it submitted its certification.

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

January 23, 2006
Section 00004
Version 0

Page 10 of 13

# AFFIDAVIT NO. 8

## MIAMI-DADE COUNTY REGARDING DELINQUENT AND CURRENTLY DUE TAXES, FEES AND PARKING TICKETS (Section 2-8.1(c) of the County Code)

Except for small purchase orders and sole source contracts, the above named entity verifies that all delinquent and currently due fees or taxes – including but not limited to real and property taxes, utility taxes and occupational licenses – which are collected in the normal course by the Miami-Dade County Tax Collector as well as Miami-Dade County issued parking tickets for vehicles registered in the name of the entity have been paid.

# AFFIDAVIT NO. 9

## CODE OF BUSINESS ETHICS AFFIDAVIT

The above named entity has adopted a business Code of Ethics that complies with the requirements of County code Section 2-8.1(i).

The above named entity hereby affirms its understanding that its failure to comply with its Code of Business Ethics shall render any contract between it and the County voidable, and subject it to debarment from future County work pursuant to Section 10-38(h)(2) of the Code of Miami-Dade County. The Inspector General shall be authorized to investigate any alleged violation by a contractor of its Code of Business Ethics. Nothing contained herein shall be construed to limit the powers and duties of the Inspector General as stated in other sections of the Code of Miami-Dade County.

# AFFIDAVIT NO. 10

## CURRENT IN OBLIGATIONS TO THE COUNTY AFFIDAVIT PURSUANT TO COUNTY CODE SECTION 2-8.1(H)

Above named bidder, as of the date of this affidavit, verifies that the individual or entity is current in its obligations to the County and is not otherwise in default of any County contract.

# AFFIDAVIT NO. 11

## FAMILY LEAVE PLAN CERTIFICATION

That in compliance with Section 11A-29, et seq., of the Miami-Dade County Code, the above named entity provides the following information and is in compliance with all items in the aforementioned Code.

Employees shall be entitled to take leave on the same terms and conditions as are provided within the Family and Medical Leave Act of 1993 (FMLA), Public Law No. 103-3, and any amendments thereto, with the exception of the following:

(a) An employee may also take leave to care for a grandparent with a serious health condition on the same terms and conditions as leave is permitted under the FMLA to care for a parent with

POJV – North Terminal Development Consolidation Program
Single Execution Affidavit
Project No. 747B

January 23, 2006
Section 00004
Version 0

Page 11 of 13

This single execution shall have the same force and effect as if each of the above certifications/verifications had been individually executed.

_Donald L. Crissey_ (signature)

(Signature of Authorized Representative)

Title __Donald L. Crissey, President__

Date __October 20, 2006__

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

The above instrument was acknowledged before me this __20__ day of __Oct.__ ,20 __06__ ,

by __Donald L. Crissey, President_____ ,
(Authorized Representative)

of__Beauchamp Construction Company, Inc._____ ,
(Name of Corporation, Partnership, etc.)

who is personally known to me or has produced as _____ identification
and who did/did not take an oath.

_Denise Rusinque_ (signature)

(Signature of Notary)                                    Notary Stamp or Seal:

__Denise Rusinque__

(Print Name)

Denise Rusinque
My Commission DD224537
Expires June 22, 2007

Notary Commission Number: _____ ,

My Commission Expires: _____
                         (Commission Number)

# Attachment F.2.4

# DBE Submittal Information

# DISADVANTAGED BUSINESS ENTERPRISE (DBE) UTILIZATION

The undersigned bidder/offeror has satisfied the requirements of the bid specification in the following manner (please check the appropriate space).

  __XX__        The bidder/offeror is committed to a minimum of __21__% DBE utilization in this Contract.

  _____        The bidder/offeror (if unable to meet the DBE goal of _____% is committed to a minimum of _____% DBE utilization on this contract and submits documentation demonstrating good faith efforts.

Name of bidder/offeror's firm: __Beauchamp Construction Company, Inc.__

State Registration No. _____ CGC042059 _____

By: _____        Title: President _____
      (Signature)

_____        Date: __10/20/06__
  Donald L. Crissey
    (Print Name)

FORM DBE-MA-1 – Revised May 15, 2002

North Terminal Development Consolidation Program        January 23, 2006
DBE Participation Provisions        Section 00020
Project No. 747B        Version 0

Page 9 of 12

# SCHEDULE OF PARTICIPATION BY DBE FIRMS

Listed below is the information pertaining to "certified" DBE firms who will be participating in this contract.

| NAME OF DBE FIRMS | DESCRIPTION OF SERVICES | $ & % OF BID/PROPOSAL | |
|---|---|---|---|
| EMMAN ENTERPRISES | PAINTING & COATINGS | $924,000. | 1.23 % |
| THORNTON CONSTRUCTION | PROJ. MISC. LABOR & CARPENTRY, CLEANING DEMOLITION, STUCCO/PLASTER | $6,343,000. | 8.46% |
| DKG METALS | MISC. METALS | 500,000. | .67% |
| SEWELL PROF. PAINTING | GLASS CLEANING | 50,000. | .07% |
| MCO CONST. SERVICES | ACOUSTICAL CEILINGS & CARPENTRY | 1,390,000. | 1.85% |
| MAVERICK | MISC. LABOR FOR SPECS 9547, 9770, 9775, 9780 | 4,518,000. | 6.03% |
| JCM | DRYWALL GENERAL LABOR | 550,000. | .73% |
| JORDAN CONST. | MISC. LABOR FOR 9780. | 1,500,000. | 2.00% |
| | | | |
| | | | |

Form to be completed and signed by the Bidder/Proposer.  I certify that the representation contained in this Schedule of Participation are to the best of my knowledge true and accurate.

Signature                                         OCTOBER 20, 2006
Date

DEAN A. THOMAS        EXEC. VICE PRES    BEAUCHAMP CONSTRUCTION COMPANY.
Print Name                     Title                 Company Name
Form DBE-MA-2   Revised May 15, 2002

North Terminal Development Consolidation Program
DBE Participation Provisions
Project No. 747B

January 23, 2006
Section 00020
Version 0

Page 10 of 12

# LETTER OF INTENT
## DISADVANTAGED BUSINESS ENTERPRISE
## PARTICIPATION

To: _Beauchamp Construction Company_

Project: _North Terminal Development Consolidation Program MIA 747.B_

AB IN FILL

Contract Number: _Walk & Ceilings_ #11D- Total $ value & % of Bidder/Proposal: _924,000/1.23%_

The undersigned holds DBD Certificate No. _4075_ expiring on, _5/31_ 20_07_

The undersigned intends to perform the following work in connection with the above Bid/ Proposal (Describe): _PAINTING : COATINGS_

| Description of Services | $ value & % of Bid/Proposal |
|---|---|
| _ELASTOMERIC COATINGS (9835)_ | _$ 924,000 / 1.23 %_ |
| _PAINTING (9900)_ | _IN ABOVE AMOUNT_ |
| | |
| | |
| | |
| | |
| | |

Signature _[signature]_

Total% _1.23 %_

Date _10/23/2006_

Print Name _EMMANUEL OKPALA_

Title _PRESIDENT_

DBE Firm _EMMAN ENTERPRISES, INC._

**Form DBE-MA-3**
Revised May 15, 2002

North Terminal Development Consolidation Program
DBE Participation Provisions
Project No. 747B

January 23, 2006
Section 00020
Version 0

Page 11 of 12

# LETTER OF INTENT
## DISADVANTAGED BUSINESS ENTERPRISE
## PARTICIPATION

To: BEAUCHAMP CONSTRUCTION COMPANY

Project: NORTH TERMINAL DEVELOPMENT CONSOLIDATION PROGRAM MIA 747-B

AS IN FILL

Contract Number: #11D - WALK & CEILINGS Total $ value & % of Bidder/Proposal: $6,343,000 8.46%

The undersigned holds DBD Certificate No. 4066 expiring on, 3/31 20 07

The undersigned intends to perform the following work in connection with the above Bid/ Proposal (Describe): DEMO STUCCO/PLASTER, PROJECT MISC LABOR & ROUGH CARPENTRY.

| Description of Services | $ value & % of Bid/Proposal |
|---|---|
| SELECTIVE DEMOLITION (2070) | $6,343,000 / 8.46% |
| PORTLAND CEMENT PLASTER-STUCCO (9220) | IN ABOVE AMOUNT |
| PORTLAND CEMENT PLASTER-INTERIOR (9225) | " " " |
| FURRING & LATH (9205) | " " " |
| PROJECT MISC LABOR & ROUGH CARPENTRY (6100) | " " " |
| | |
| | |

Total% 8.46

Signature [signature]

Date 10/23/2006

Print Name THOMAS THORNTON

Title PRESIDENT

DBE Firm THORNTON CONSTRUCTION COMPANY, INC.

Form DBE-MA-3
Revised May 15, 2002

North Terminal Development Consolidation Program
DBE Participation Provisions
Project No. 747B

January 23, 2006
Section 00020
Version 0

Page 11 of 12

# LETTER OF INTENT
## DISADVANTAGED BUSINESS ENTERPRISE
## PARTICIPATION

To: _Beauchamp Construction Co_

Project: _Miami International Airport Project 747 B_

Contract Number: _Bid Pkg 11 D_ Total $ value & % of Bidder/Proposal: _$500,000.00  0.67%_

The undersigned holds DBD Certificate No. _11547_ expiring on, _1/31 20 09_ .

The undersigned intends to perform the following work in connection with the above Bid/
Proposal (Describe): _____

| Description of Services | $ value & % of Bid/Proposal |
|---|---|
| Supply of labor + material to | $500,000.00  0.67% |
| fabricate + install Misc metals | |
| MISC. metals - Spec section 05500 | |

Total% _0.67 %_

Signature _Patricia George_       Date _10.20.06_

Print Name _Patricia George_       Title _General Partner_

DBE Firm _D.K.G. + Associates, Ltd_

FORM DBE-MA-3
Revised May 15, 2002

# LETTER OF INTENT
# DISADVANTAGED BUSINESS ENTERPRISE
# PARTICIPATION

To: _BEAUCHAMP CONSTRUCTION COMPANY_

Project: _NORTH TERMINAL DEVELOPMENT CONSOLIDATION PROGRAM MIA 747·B_  AS IN FILL

Contract Number: _WALK & CEILINGS_ #11D- Total $ value & % of Bidder/Proposal: _50,000/.07%_

The undersigned holds DBD Certificate No. _2145_ expiring on, _9/30_ 20 _07_

The undersigned intends to perform the following work in connection with the above Bid/ Proposal (Describe): _cleaning of the glazing systems_

| Description of Services | $ value & % of Bid/Proposal |
| --- | --- |
| _CLEANING OF GLAZING SYSTEM (8800)_ | _$ 50,000 / .07%_ |
| | |
| | |
| | |
| | |
| | |

Total% _.07 %_

Signature _Harold Sewell_    Date _10/23/2006_

Print Name _HAROLD SEWELL_    Title _____

DBE Firm _SEWELL PROFESSIONAL PAINTING & CLEANING SERVICE_

**Form DBE-MA-3**
Revised May 15, 2002

North Terminal Development Consolidation Program
DBE Participation Provisions
Project No. 747B

January 23, 2006
Section 00020
Version 0

# LETTER OF INTENT
## DISADVANTAGED BUSINESS ENTERPRISE
## PARTICIPATION

To: BEAUCHAMP CONSTRUCTION

Project: 747B - NORTH TERMINAL DEVELOPMENT CONSOLIDATION PROGRAM

Contract Number: WALL & CEILINGS Total $ value & % of Bidder/Proposal: $1,390,000 / 1.85%

The undersigned holds DBD Certificate No. 3880 expiring on, 6/30/2008

The undersigned intends to perform the following work in connection with
the above Bid/ Proposal (Describe): BID PACKAGE II- FINISHES

| Description of Services | $ value & % of Bid/Proposal |
|---|---|
| ACOUSTICAL PANEL CEILINGS & | $1,390,000 / 1.85% |
| MISC. CARPENTRY | |
| | |
| | |
| | |
| | |

Total% 1.85%

Signature _____

Date 10-20-06

Print Name ANN MCNEILL    Title President

DBE Firm MCO CONSTRUCTION & SERVICES INZ.

**Form DBE-MA-3**
Revised May 15, 2002

North Terminal Development Consolidation Program
DBE Participation Provisions
Project No. 747B

January 23, 2006
Section 00920
Version 0

Page 11 of 12